MUSKINGUM WATERSHED CONSERVANCY DIST., APPELLEE, *v.* OHIO POWER CO., APPELLANT.

(Decided April 20, 1937.)

*Messrs. Wilkin, Fisher & Limbach,* for appellee.
*Messrs. Kinsey & Allebaugh,* for appellant.

LEMERT, J. This is an appeal on questions of law from the decree of the Conservancy Court confirming

the report of the appraisers. The action or proceeding, a review of which is here sought, was commenced when the appellant, Ohio Power Company, filed its exception to that report under authority of Section 6828-32, General Code, which provides as follows:

"Any property owner may accept the appraisals in his favor of benefits and of damages and of lands to be taken made by the appraisers, or may acquiesce in their failure to appraise damages in his favor, and shall be construed to have done so unless he shall within ten days after the last publication provided for in the preceding section file exceptions to said report or to any appraisal of either benefits or damages or of land to be taken which may be appropriated."

At the very outset of this case it may be stated that the two principal questions for determination and review of this group are: (1) Was the benefit assessed excessive? (2) Was the report of the appraisers legal and binding?

For the consideration of the first proposition we note that the testimony has to do with what is known as the Philo Station and wet coal storage plant situate along the Muskingum river in Muskingum county, Ohio. The so-called Philo plant is a modern steam electric generating plant situate in Harrison township, Muskingum county, on the west bank of the Muskingum river.

A benefit of $167,833 is assessed against the Philo plant, and benefits of $58,860 assessed against the coal storage plant.

There are other adjuncts in connection with this plant, to wit, tracks, switch yards, transformer yards, units, etc., but no question is raised as to these. Neither is there any dispute as to the elevation of either the plant or the storage, or the height of the 1913 flood at this point. The only controversy is with regard to the benefits assessed against these two items.

The generator plant itself is situated upon an elevated shelf of ground close to the river's edge, on the inward side of a bend which curves to the east. It was built in 1922 with specific reference to the 1913 flood, so that the main floor of the plant itself is 1.9 feet above the high water mark of the 1913 flood as established by a marker on the adjacent lock house. The main floor of the plant is bisected by a depressed railroad track. The steam generating plant is on one side of this track and the emergency or electric generating plant or turbine is on the other side. The rails of this track will be flooded to a height of 1.5 feet when the waters of the Muskingum river again rise to the height of the 1913 flood. And when the waters again reach this height the plant itself will be completely surrounded by water and the wet storage will be completely submerged, according to the testimony offered on behalf of the district, which is not seriously controverted. Because of the obstruction of channel cross section, caused by the construction of the plant itself and its incidental buildings, the water will be higher than it was in 1913 when the next flood of equal magnitude occurs.

It also appears in the testimony that because of the plant itself and the other improvements constructed on the property by the appellant in developing the site, destructive currents will set in when such a flood again occurs, with consequent destructive erosion and dangerous drift.

To the north of the main plant there is a large pit for the storage of reserve coal supply, which has been referred to heretofore as the wet coal storage.

The question in dispute is whether the plant and wet storage will be benefited as a result of the execution of the official plan of the conservancy district. A perusal of the record of the testimony offered in this case, viewed in the most liberal light, indicates that

such benefits were proved by a preponderance of the evidence. This is true because there is no testimony to controvert the testimony of Mr. Chambers and Mr. Ullom that, by the construction of the plant and its incidental structures, the cross section of the river valley has been reduced. From this uncontroverted fact the only inference that can arise is that this construction will both raise the height of the water at this point above what 'it was in 1913, during a recurring flood of equal magnitude, and, also because of this construction, will increase the speed of flow past this point and thus set up faster and more destructive currents than the flood of 1913 produced.

When the official plan for this conservancy district was adopted, every person to be affected thereby was placed on notice that the total cost would exceed the total benefits, and that the plan could not be placed in execution within the limitation contained in Section 33 of the Conservancy Act (Section 6828-33, General Code). These persons were also fully apprised that the district proposed to secure additional money needed from both the state and federal governments.

The adoption of the official plan was a final order, as has been heretofore held by this court. The appellant was a party to it.

The appellant contends that the appraisers' report is not legal and valid. We might say that a number of rules might have been devised and applied for appraisement purposes, each of which might have worked equally well. We are of the opinion that the rule adopted is an honest attempt to solve the problem, and not only has the appellant failed to suggest a better one, but there is no testimony in the bill of exceptions attempting to prove that it is not both workable and fair, or that the results obtained by its use are not reasonably accurate.

In making these appraisements the board had the

assistance of the engineering force, and of inspectors employed by the district, as is permitted by the act. Data was prepared as to each parcel to be assessed, its area, boundaries, the improvements on it, and its location and uses. Certain cards were prepared, and when these cards were completed two inspectors viewed each parcel, taking the cards with them, and from actual view, by the application of the uniform rules established, set their estimate of its value. The work of the inspectors was then reviewed by the appraisers, first upon actual view, and later by further consideration of each appraisal card. When the value, character and location of each parcel was established, then by the use of the maximum protection percentage and the curve factors, the amount of each assessment was determined.

It will be seen that, under the method used, different percentages of benefit were applied to property of different classes. This was not done arbitrarily, or to favor any class, or persons, or property, but rather so that the actual benefit might be justly and uniformly determined. It was determined that in order to assess benefits uniformly, it was necessary to classify the property to be assessed.

It is not claimed that the rule applied is perfect. But we are of the opinion that it was just and reasonable, and secured a uniform result. It is a controlling fact that though the appellant now complains about it, yet he introduced no evidence at the hearing to controvert its propriety.

We are of the opinion that in this particular case the method chosen transgresses neither the due process nor the equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. The method of assessment used was adopted in good faith and was uniformly applied. We cannot find from the record before us that the assessment was excessive.

There was no classification of property for the fixing of unequal burden, but only as a means of arriving at a true and just value so that the burden could be borne equally by all property in accordance with the benefits received. The district was not required to adopt an iron-clad rule for this purpose. The regulations, so long as they proceed within reasonable limits and general usage, are proper. Regulations such as are used here are proper so long as there is no manifest and unreasonable discrimination in fixing the benefits which the several parcels will receive. And it is not necessary that the benefits to the parcel assessed be direct or immediate.

Consequently, unless the Conservancy Court was under the duty bound consideration from the evidence adduced to find that the method adopted by the board of appraisers in levying the assessments was manifestly and unreasonably discriminatory, and was under this duty to such a degree that to find otherwise would manifestly transgress the weight of evidence, there is no error in its judgment.

From an examination of the whole record it clearly appears from the bill of exceptions that had the court taken the view contended for by appellant, then its decision would have been manifestly against the weight of the evidence.

We are therefore of the opinion that for the reasons hereinbefore given none of the assignments of error are well taken. The finding and judgment will be affirmed and the appeal dismissed.

*Appeal dismissed.*

Montgomery, P. J., and Sherick, J., concur.