## MUSKINGUM WATERSHED CONSERVANCY DIST v CLOW

Ohio Appeals, 5th Dist, Tuscarawas Co

Decided April 28, 1937

Wilkin, Fisher & Limbach, New Philadelphia, for appellee.

Kinsey & Allebaugh, Steubenville, for appellant, Kent S. Clow.

R. M. Noll, Marietta, J. C. Brenan, Marietta, T. J. Summers, Marietta, E. F. Folger, Marietta, James A. Meredith, Strecker & Williamson, Marietta, Ernest E. Erb, Columbus, Franklin L. Maier, Massillon, Meyer, Crossan & Kincaid, Zanesville, Charles D. Folger, Marietta, J. S. Phillis, Zanesville, Pugh & Van Dervoort, Zanesville, William L. Weber, Zanesville, T. M. Lynn, A. A. Porter, Zanesville, C. T. O'Neill, Marietta, Wendel Stevens, Columbus, and H. W. Seikel, Dover, for various other appellants.

## OPINION

By MONTGOMERY, PJ.

An appeal was perfected to this court by the appellant, Kent S. Clow, from the final entry on exceptions and decree confirming the appraisal record entered by the Conservancy Court. From the same order similar appeals were perfected to this court in 123 additional cases, to-wit: Numbers 476 to 547, inclusive, numbers 555 to 561, inclusive, number 570, numbers 574 to 587, inclusive, numbers 596 to 623, inclusive, and number 625. The order entered in this case in conformity with this opinion may be entered in each and all of the above numbered cases. The discussion which will follow is intended to cover all of these cases and some of the observations will be directed to some of the cases, other observations to other cases, and interested counsel will have no difficulty in determining the applicability of our conclusions.

As stated, the appeals perfected in the several cases were from the same order, and similar in character, and all of the appeals are from the order of the Conservancy Court determining the benefits for which assessments may be made against the several appellants. The relief sought by the several appellants varies somewhat in that some of them ask that the district be disorganized, others ask that the official plan be ordered returned to the directors of the district with instructions to prepare new or amended plans, others seek a revision of the particular findings against them, and some of them ask for relief in these alternatives.

The Conservancy District, in some of these cases, filed motions to dismiss the appeal on the ground that there was no order from which an appeal could be perfected to this court. Counsel in open court stated that such motions could be considered withdrawn, in view of the requirements of §6828-33, GC, which section would require the determination as a matter of fact, that the estimated cost of the improvement is less than the benefits appraised, and that this is one of the questions raised by various and sundry of these appellants. This position taken by counsel seems to us the correct one.

### Sec 6828-33 GC is as follows:

"If it appears to the satisfaction of the court after having heard and determined all said exceptions that the estimated cost of constructing the improvement contemplated in the official plan is less than the benefits appraised, then the court shall approve and confirm said appraisers' report as so modified and amended, and such findings and appraisals shall be final and incontestable. In considering the appraisals made by the board of appraisers, the court shall take cognizance of the official plan and of the degree to which it is effective for the purposes of the district. In case the court shall find that the estimated benefits appraised are less than the total costs of the execution of the official plan exclusive of interest on deferred payments, or that the official plan is not suited to the requirements of the district, it may at its discretion return said official plan to the directors of the district with the order for them to prepare new or amended plans, or it may disorganize the district after having provided for the payment of all expenditures."

It would follow that if the evidence should show, as a matter of fact, that the benefits appraised are less than the total cost, it would be necessary either to disorganize the district or to order a revision of the official plan. The record before us shows that the estimated benefits appraised are approximately thirteen million dollars. The estimated costs to the Muskingum Watershed Conservancy District, as such, will not exceed seven million dollars. This seems to us to answer the question so as to determine as a fact the proposition that the benefits do exceed the cost. Additional millions have been, and will be, contributed by the federal Government and by the state of Ohio, sufficient to take care of the additional cost of the improvement, but the district is not responsible for these items. So far as the district is concerned, it seems to us that the answer is clear. This observation is made in view of the filing of the motions by the Conservancy District, and in view of one of the objections made by various and sundry of the appellants.

On the other hand, counsel for the Conservancy District contend that, under this same §6828-33, GC, the Conservancy Court having determined that the estimated cost of constructing the improvement contemplated in the official plan is less than the benefits appraised, and our having found that this determination is correct, there can be no further finding by this court with reference to the complaints urged, under the language of that section, to-wit: "and such findings and appraisals shall be final and incontestable."

In view of the other provisions of this

act, what is meant by this language? There is a much used and a much abused term "legislative intent." It is always an intangible thing. It is frequently incapable of any intelligible definition. It is sometimes unascertainable. What could have been the legislative intent in inserting this provision in the Ohio Conservancy Act? The very next section of the act, §6828-34, GC, provides for an appeal from the award, and provides for the procedure upon such an appeal. The various provisions of the act itself negatives the proposition that the findings of the Conservancy Court shall be incontestable.

It is argued by counsel for the Conservancy District that there can be no upsetting of the decree of the Conservancy Court in the absence of fraud or abuse of discretion, and that none such is shown in the instant cases. We cannot concur in this conclusion. The Conservancy Court was not acting as a legislative body. It was acting as a court, and denominated such. Without making any pretense of determining "the legislative intent," we decline to hold that this decree cannot be contested. And the cases are retained for a discussion of the other questions raised.

The constitutionality of this whole Conservancy Act is again raised by various appellants. It is to be observed that this act was originally passed by the Legislature in order to provide for the Miami District improvement. The constitutionality of the act was upheld in toto and in detail by the Supreme Court of Ohio, and its constitutionality is not now a debatable question.

It is urged that the Conservancy Court in the instant case acted in an irregular fashion in many specified particulars, and it is further urged that the Board of Appraisers did not proceed as required under the provisions of the act authorizing their appointment. We find no merit in either of these contentions. We have heretofore, in the opinion in **Muskingum Watershed Conservancy Dist. v Ohio Power Co., 56 Oh Ap ...**, in which the Ohio Power Company was appellant, expressed approval of the methods adopted by the appraisers and the conduct of the Conservancy Court. Without repeating what we there said, suffice it to say that we again express approval of the methods adopted by the appraiser and the manner of procedure by the Conservancy Court.

There remains really but one other question to consider, which, however, is the most serious and the most difficult of all the questions raised, and that is that, under the rules adopted by the Board of Appraisers and by the Conservancy Court, findings were made which were inequitable, lacking in uniformity, and resulting in great injustice.

Having expressed approval of the proceedings, as hereinbefore indicated, it might be urged that this court has no further duty to perform at this time, and that these appellants should be left to prosecute their appeals under §6828-34, GC, for it appears that each and all of them have filed notice of such intention so to appeal, and that the Conservancy Court has ordered the directors of the district to begin condemnation proceedings according to law, as directed by §6828-34 GC. But it is our notion that counsel and the several trial courts in these counties where these condemnation cases are to be instituted are entitled to the views of this court for their guidance in such condemnation cases, rather than that the matter be left to the judgment of each individual trial judge, subject to a later review before this court, at which time we would be compelled to pass upon the question of the method of determining benefits.

In the case of **Muskingum Watershed Conservancy Dist. v Haynes,** and in 26 other related cases, in an opinion filed on February 23, 1937, and reported in **53 Oh Ap 284, 9 NE (2d) 705, (24 Abs 258)** we said with reference to those cases, which however, were condemnation and damage cases, that:

"It is the view of this court that the rule adopted by the board of appraisers and by the conservancy court is not controlling or binding in the several condemnation proceedings. While the factors considered by the appraisers and approved by the conservancy court might well be taken into consideration, nevertheless, the real question to be submitted to the jury is the difference in the value of the property before and after the appropriation."

In that opinion we discussed the effect of the decision of the Supreme Court in the case of **Miami Conservancy Dist. v Ryan, 104 Oh St 79, 135 NE 282,** and, as we view it, that is the thing which must be done in the cases now before us, in its application to these cases, which are benefit cases.

It was suggested by some counsel in the presentation of the instant cases that the court could apply a rule similar to that applied in the Haynes case. It will be recalled that in the course of the opinion

in the Haynes case we made this observation:

"However, the Ryan case had to do not with compensation and damages, but with benefits. and the Supreme Court held that it was essential that the assessments for benefits should be equal and uniform."

A clear statement of the rule governing assessments for benefits was made by the Supreme Court in the case of **Chamberlain v City of Cleveland**, 34 Oh St 551, and, except as this may have been modified by the Ryan case, due to the particular situations there and here involved, it is certainly the law in Ohio. The second and third branches of the syllabus of the Chamberlain case are as follows:

"2. The whole amount of the assessment must be apportioned amongst the several lots and parcels of land specially benefited, in the proportion that the special benefit to each lot or parcel bears to the whole special benefits conferred by the improvement.

"3. Where the proceedings in an appropriation assessment, on the principle of special benefits, merely show upon their face, that the aggregate amount of the assessment is placed on 'benefited property,' it will not be conclusively presumed that the assessment is limited to the special benefits conferred, or that it has been properly apportioned amongst the several lots or lands assessed."

It is to be observed that §6828-45, **GC**, a part of the Conservancy Act, specifically says that: "The said assessments shall be apportioned to and levied on each tract of land or other property in said district in proportion to the benefits appraised, and not in excess thereof." This section of course, has to do with the levying of assessments subsequent to the determination of the benefits, but it might be argued from the language used that no tract of land should be found subject to benefits or assessments in excess of actual benefits. The framers of the Conservancy Act would appear to have had in mind general conformity to the established law of Ohio with reference to the fixing of benefits in the case of public improvements.

We have heretofore indicated in the opinion in the Ohio Power Co. case, supra, and in this opinion, that we do not regard the rules adopted by the Board of Appraisers and the Conservancy Court as either

inequitable or lacking in uniformity. It would appear, however, that in certain cases an injustice will be done by the application and approval of these rules.

For example, in case No. 476, wherein James B. Clow & Sons are appellants, their property is held liable for benefits in a sum in excess of one hundred thousand dollars, and there is evidence to sustain the contention that the only damage sustained by them in previous floods was by way of curtailed operations, and that the actual damage to their property was negligible.

Again, there is evidence to the effect that the appellant in case No. 531, Peoples Bank & Trust Co. of Marietta, has a building so constructed that flood water may easily be excluded from the building; that the walls are of stone and concrete, and that no substantial damage would be done until there is an overflow of approximately forty-six feet.

Again, there is evidence to sustain the contention of some of the appellants who own small tracts of land along the lower reaches of the Muskingum river that the benefits found to accrue to them are substantially the value of the several tracts of land. This would seem to be an incongruous and impossible situation.

We call attention to these three instances of apparent injustice, instances which would seem to justify loud cries for relief from a court. Except for the conclusion in the Ryan case, supra, we would feel bound to endeavor to vary the rules adopted by the lower court so as to afford the relief to which the several appellants injuriously affected would seem to be entitled. What is the actual effect of the Ryan case, as applied to the various situations now confronting us?

Counsel for the appellants in cases 574 to 584, inclusive, in their brief make the following concession:

"The Supreme Court of Ohio has construed the right of appeal in the **Ryan case, 104 Oh St, p. 79,** in such a manner that the hearing upon appeal before the Court of Common Pleas of the county in which the property is situated, in the matter of assessments of benefits or damages, that the property owner, who may be injured, or whose assessments are excessive, has little, if any, remedy."

Further on in their brief, these same counsel quote from the opinion in the Ryan case, on page 87, as follows:

"We think, therefore, that the rule employed by the board of appraisers became a principle of law * * *.

"But inasmuch as the power of making appraisements was delegated to a board of appraisers, the board must be held to have inherent power to adopt proper rules to make its action legal and uniform."

Apparently conceding, therefore, that if the proceedings of the board and the lower court are regular and generally approved, there can be no relief in view of the Ryan case, these counsel then proceed to argue the irregularity of the rules adopted and of the procedure in the court below. Other counsel do not stress the Ryan case, and in fact pay little attention to it, but do discuss the proposition which we have heretofore in this opinion decided, and do discuss the inequalities and alleged injustices occurring in different instances. However, we have heretofore indicated our approval of the general rules adopted by the Board of Appraisers and confirmed by the Conservancy Court, and are face to face with the single proposition as to the actual effect of the Ryan case and whether the concession made by counsel in cases Nos. 574 et seq., is justified. What is its effect as applied to the appellants generally, and in particular to such as appear to have been affected injuriously by the finding against them, of which we have heretofore noted three instances?

The first and second branches of the syllabus in the Ryan case are as follows:

"1. In making assessments to pay costs and damages of an improvement under the conservancy act (§6828-1 GC et seq) it is essential to the validity of such assessments that they should not exceed the benefits; it is equally essential that such assessments should be equal and uniform upon all property subject to assessment.

"2. In making such assessments a board of appraisers may properly formulate rules to aid in producing equality and uniformity, and where rules have been formulated and uniformly applied in making assessments upon all the property subject to assessment, and where a large proportion of the property subject to assessment has submitted to assessment in accordance with such rules, such rules if reasonable may not be disregarded in a hearing before the Court of Common Pleas and a jury, upon appeal by the owner of a portion of the property so assessed, and the question of the reasonableness of such rules becomes a question of law for the court and may not be submitted to the jury for their determination."

It is to be observed that, in the first branch of the syllabus, the court, while adhering to the general rule that the assessments shall not exceed the benefits, lays down the proposition that they shall be "equal and uniform upon all property subject to assessments." On page 85 of the opinion the court says:

"The fact to be determined was the value of the benefits to the particular property, or in other words the fair and equitable assessment, not particularly and solely what the improvement was worth to her property, but assuming that the entire improvement was worth all it cost to the whole of the property being assessed for its payment, what was the fair proportion, on a basis of equality and uniformity, to be assessed against the property of appellant?"

And again, on pages 87 and 88 we find the following:

"It is of course essential that there be equality and uniformity in making assessments, but it does not follow that there must be exactness. In nearly all street improvements provided for by municipal legislation, the assessments are made by levy of a fixed sum upon each foot front of property abutting upon the improvement, and the municipal legislation is made to carry the declaration that the several pieces of property are specially benefited to the extent of the assessment so levied. In a majority of such cases a careful analysis of the condition would disclose that some properties are very greatly benefited and others but slightly; that the assessment while uniform in theory is arbitrary in fact; and yet the validity of that mode of assessment is no longer questioned or even criticized."

Still later, on page 89 of the opinion, the court says:

"The plan should be treated as a real rule having the force of a legal rule to govern all assessments made to pay the costs and damages of this improvement."

We are bound by this opinion, if understood and correctly interpreted, and it seems to us that the language of the opinion is not uncertain, that it answers the different problems which have been presented to, and which have troubled, us, and that it affords a direct answer to the con-

tentions of the particular appellants whose claims of injustice we have heretofore mentioned in this opinion.

And directed particularly to the contention of the Peoples Bank & Trust Company, in case No. 531, heretofore mentioned, should be another proposition decided by the Supreme Court in the Ryan case. We quote from page 89 of the Ryan case:

"The other question was as to the expense of cleaning up the houses subsequent to the flood. We think it was not error to reject such testimony, because the question before the court was as to the reasonableness of the assessment to pay for an improvement, not for the purpose of repairing the damages of the flood of 1913 but to provide against the recurrence of similar floods for all time to come. This improvement in the Great Miami Valley was doubtless made upon the assumption that similar floods might occur at intervals through all future time, and it was not the dominant idea that it would merely save the expense of cleaning up houses but rather that properties would be rendered more valuable and the community a better and safer place to live if such comprehensive measures were taken for their protection."

The judgment of the Conservancy Court in all these cases must be, and is, affirmed.

SHERICK and LEMERT, JJ, concur.