HOSTETTER, APPELLEE, *v.* MUSKINGUM WATERSHED CONSERVANCY DISTRICT ET AL., APPELLANTS.

(Decided March 2, 1938.)

*Mr. A. C. L. Barthelmeh,* for appellee.
*Messrs. Wilkin, Fisher & Limbach,* for appellants.
*Mr. Carl F. Klein,* for Lash, county auditor.

MONTGOMERY, P. J.   The relief sought in this action is an injunction against the Muskingum Watershed Conservancy District and its directors from issuing or selling bonds in the sum of $1,500,000 under Sec-

tion 6828-44a of the General Code of Ohio (115 Ohio Laws, 237), and from levying a tax to discharge the same, upon the real property in the district, according to the assessed value thereof. Warrants had been issued by the district as of January 1, 1937, in the sum of $3,000,000, and the purpose of this proposed bond issue is to retire of these warrants an amount equaling in value the amount of the bonds.

A decree having been rendered in the Common Pleas Court, an appeal was perfected to this court on questions of law and fact.

There are two classes of bonds authorized by the Conservancy Act, Section 6828-1 et seq., General Code. These sub-sections giving this authority are 44a and 47. These sub-sections by their very terms limit and define the purpose for which bonds may be issued under their provisions.

Sub-section 44a (115 Ohio Laws, 237) recites that: "The board of directors may issue bonds of the district to mature over a period not exceeding ten years for the purpose of retiring any warrant or warrants or instruments evidencing indebtedness incurred pursuant to the provisions of Sections 6828-43 and 6828-44 of the General Code, which have matured or which are about to mature. * * *"

Sub-section 47 (115 Ohio Laws, pt. 2, 355) recites that: "The board of directors may, if in their judgment it seems best, issue bonds not to exceed ninety per cent of the total amount of the assessments, exclusive of interest, levied under the provisions of this act." This latter authorization is clearly directed toward the assessment power vested in the board under Sub-section 45 of the act (104 Ohio Laws, 37), which provides that it "shall levy on all real property, upon which benefits have been appraised, an assessment of such portion of said benefits as may be found necessary by said board to pay the cost of the execu-

tion of the official plan including superintendence of construction and administration." It further authorizes additional levies as the same may be needed, provided the total of such levies does not exceed the benefits.

In this proceeding we are not concerned directly with the power of the board to act under these Subsections 45 and 47. It is conceded that the board proposes to issue bonds under the alleged authority of Sub-section 44*a*, and this in spite of the fact that the resolutions authorizing the original and subsequent warrants recited that they "shall be issued in anticipation of the issuance of bonds to be issued under Section 6828-47 of the General Code of Ohio," and in spite of the fact that ample authority is given it to act under said last named section. The reason assigned for this change of front will be discussed hereinafter.

Just what power is given the board under this Subsection 44*a*? As heretofore indicated, it is directed to, and is supplemental to, Sub-sections 43 and 44 and to them only. Sub-section 43 (104 Ohio Laws, 35) is labeled "Preliminary expenses, how paid." Its third paragraph recites that: "As soon as any district shall have been organized under this act, and a board of directors shall have been appointed and qualified, such board of directors shall have the power and authority to levy upon the property of the district not to exceed three-tenths of a mill on the assessed valuation thereof as a level rate to be used for the purpose of paying expenses of organization, for surveys and plans, and for other incidental expenses which may be necessary up to the time money is received from the sale of bonds or otherwise." Sub-section 44 (104 Ohio Laws, 37) then provides that "in order to facilitate the preliminary work, the board may borrow money * * * and may pledge (after it has been levied)

the preliminary tax of not exceeding three-tenths of a mill for the repayment thereof.''

It is true that Sub-section 44a contains a provision that the indebtedness created thereunder shall never exceed one-half of one per cent of all taxable property listed in the district. But in view of the limitation of authority in this sub-section, making it supplemental to the two preceding sub-sections only, this provision seems to us without meaning.

It is to be noted also that the Conservancy Court which established the district and appointed the directors limited preliminary expenses to be incurred to $16,000 and specifically ordered that the directors ''shall levy no tax and make no assessment for the payment of any preliminary expenses, save and except as provided in this entry in excess of the sum hereby ordered and authorized.'' We agree with the contention that the case of *State, ex rel. Franklin County Conservancy Dist.,* v. *Valentine, Auditor,* 94 Ohio St., 440, 114 N. E., 947, is controlling in this respect.

Appellant places reliance upon Sub-section 74 of the act, which directs that the act shall be construed liberally, and contends that the limited construction placed upon Sections 44 and 44a is not tenable. Surely this board can exercise only such authority as is vested in it by the powers creating it. ''Implied power is only incidental or ancillary to an express power, and, if there be no express grant, it follows, as a matter of course, that there can be no implied grant.'' *State, ex rel. A. Bentley & Sons Co.,* v. *Pierce, Aud.,* 96 Ohio St., 44, 117 N. E., 6.

The basis of all the sub-sections which we have discussed is Sub-section 42, which is the first of the sub-sections of the act dealing with ''Financial Administration'' and it is entitled ''Funds.'' It does not seem to us to be subject to much interpretation, liberal

or otherwise. It is specific in its terms. Its first paragraph is in the following language:

"The moneys of every conservancy district organized hereunder shall consist of three separate funds: (1) Preliminary Fund, by which is meant the proceeds of the ad valorem tax authorized by this act and such advancements as may be made from the general county funds as provided in Section 43 of this act; (2) Bond Fund, by which is meant the proceeds of levies made against the special assessments of benefits equalized and confirmed under the provisions of this act; and (3) Maintenance Fund, which is a special assessment to be levied annually for the purpose of upkeep, administration and current expenses as hereinafter provided. It is intended that the cost of preparing the official plan, the appraisal (except as paid out of the preliminary fund) and the entire cost of construction and superintendence, including all charges incidental thereto, and the cost of administration during the period of construction, shall be paid out of the bond fund." (104 Ohio Laws, 35.)

The third "fund" is not involved in this controversy. The problem is to distinguish between the first and second. The first fund is "preliminary" and the absence of punctuation also indicates a reference to Sub-section 43 only, which in turn is labeled: "Preliminary expenses, how paid." The term "ad valorem" means of course "according to value," and has reference to the limited tax authorized by Subsection 43, which must be uniform.

The second fund is the bond fund, directed solely to proceeds from levies made against assessments for benefits, and the concluding sentence quoted would seem to require no interpretation. Yet appellant contends that there has been used for "preliminary expenses," and should be treated as such, the sum of $1,747,000. This tremendous sum is divided into four

funds, approximately equal in amount, to wit, administrative, engineering, appraisal and legal. The mere statement of the proposition shows its absurdity.

Many definitions are offered of the term "preliminary." For our present purpose none seems better than a terse one given by Webster, "that which precedes the main business." Manifestly, the expenditures of these items did not precede the main business, to wit, the acquiring of the land, the relocation of roads and utilities, and the construction of dams. In the stipulation made by counsel appears the following significant admission: "It is admitted that the $3,000,000 for which warrants were issued as of January 1, 1937, and which became due and payable as of January 1, 1938, includes preliminary expense and a portion of the cost of the project."

As a last refuge, appellant claims protection under House Bill 775, effective December 27, 1937, which bill attempts to validate indebtedness of political subdivisions created under conditions specified therein. A defect or omission may be validated by a curative act, but certainly no powers can be given which did not exist at the time of the creation of the indebtedness. If such a claim were made for this act—and no such claim is specifically asserted—we would hold the act invalid.

It is apparent that the defendant directors, in seeking, as they now do, to issue bonds under Sub-section 44a, have changed positions completely. All their previous acts looked to procedure under Sub-section 47. The record shows that appraised benefits in the district amount to approximately $11,500,000; that of this amount approximately $7,650,000 is final, and with no appeals pending; that an assessment has been made of fifty per cent, amounting in the aggregate to $3,797,878; that of this amount $645,000 has been paid and applied to the retirement of warrants. The only

tangible suggestion made as to delay in further assessments is the pending on motion to certify of one case in the Supreme Court. Having passed upon that case, this court knows that no question is involved in it that was not involved in the other one hundred and twenty-four cases passed upon by this court in *Muskingum Watershed Conservancy Dist.* v. *Clow,* 57 Ohio App., 132, and which the Supreme Court refused to review. (133 Ohio St., 61, 11 N. E. [2d], 876.) Moreover, it appears that the hearing of the motion to certify this case has been delayed simply on request of counsel.

It further appears from the record that settlements have been had with, or proposals made to, litigants contesting assessments, that the litigation will be withdrawn and the bond issue be put through in lieu of collecting the full amounts' that could be realized from assessments for benefits. Any such agreement may be simply unfortunate for those assessed and unfortunate for the district representatives responsible for the proposals.

, It seems to us clear that the defendant directors are without authority to issue these bonds or to make this levy. That conclusion might well terminate our consideration, but there are three other questions that deserve some comment.

The plaintiff is the owner of real estate in Stark county, which real estate is' in this conservancy district. The record shows that real estate in that county and other counties in the district will receive no benefits from this improvement. The witness Browning, secretary-treasurer of the district, was asked the question: "In any event, none of the lands which will be benefited by the retarding of floods lie within the confines' of Stark county?" He answered: "That's my understanding."

It is the well-settled law in Ohio that no property shall be assessed for the cost of a local improvement

which is not benefited thereby, and when property is assessed it shall be in the proportion that the special benefit to each parcel bears to the whole special benefits. *Walsh* v. *Barron, Treas.*, 61 Ohio St., 15, 55 N. E., 164, 76 Am. St. Rep., 354; *Chamberlain* v. *City of Cleveland*, 34 Ohio St., 551.

As we stated in the opinion in the case of *Muskingum Watershed Conservancy Dist.* v. *Clow*, 57 Ohio App., 132, *supra*, at page 139:

"It is to be observed that Section 6828-45, General Code, a part of the Conservancy Act, specifically says that: 'The said assessment shall be apportioned to and levied on each tract of land or other property in said district in proportion to the benefits appraised, and not in excess thereof.' This section, of course, has to do with the levying of assessments subsequent to the determination of the benefits, but it might be argued from the language used that no tract of land should be found subject to benefits or assessments in excess of actual benefits. The framers of the Conservancy Act would appear to have had in mind general conformity to the established law of Ohio with reference to the fixing of benefits in the case of public improvements."

The contention is made by the appellee, that, even if the bonds were permissible under the statute, the appellants are, nevertheless, estopped from issuing them. There is merit in the contention. Prior to the adoption of the official plan, the conservancy district caused a pamphlet to be circulated which stated that only those whose property will be benefited will be required to pay an assessment, and that there will be no general tax levy if the plans and record are approved and the project built. Similar statements were made in public meetings by duly accredited agents and representatives of the district. All this, of course, was for the purpose of obtaining approval of the

project and by way of inducement. It may be contended that neither the plaintiff nor any other specified individual acted upon these representations and was misled thereby, but here a substantial portion of the people of the district were misled, and, if the bond issue were permitted, were misled to their injury. Such a course of procedure cannot be endorsed, and the doctrine of estoppel might well be invoked in a taxpayer's suit such as this.

As a final argument, appellants' counsel advance in the conclusion of their reply brief, this interesting suggestion: "The real motive * * * is that if the conservation and recreational features of the official plan are to be realized the increased cost by reason thereof should, in good conscience, be borne by all the property of the district, and not by the property assessed for flood control."

Suffice it to say that we are dealing with a flood control project, and with statutes passed to provide for such control. We cannot be concerned here with things that are aesthetic, nor with the propriety of establishing additional playgrounds for the people.

We hold that:

1. The district and its directors are without authority to issue these proposed bonds.

2. There can be no general levy, except the preliminary levy not now before us, upon property not benefited.

3. The defendant district and its directors would, in any event, be estopped by their representations and conduct from issuing these bonds.

It follows, therefore, that an injunction may issue, as prayed for in the petition.

*Decree accordingly.*

SHERICK and LEMERT, JJ., concur.