OPINION *Page 2 
{¶ 1} Defendants-Appellants David L. Blackwell, et al. appeal the August 20, 2007, Judgment Entry of the Tuscarawas County Court of Common Pleas, Conservancy Division, in favor of Plaintiff-appellee Muskingum Watershed Conservancy District.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The Muskingum Watershed Conservancy District (hereinafter "MWCD") was established in 1933, and is organized pursuant to R.C. Chapter 6101 (The "Conservancy Act"). The Conservancy Act of Ohio confers jurisdiction, power and authority on the Courts of Common Pleas of any county in Ohio to establish conservancy districts provided certain conditions, as set forth in the Act, exist. The Watershed District consists of 18 counties subject to jurisdiction in the Tuscarawas County Court of Common Pleas.
 {¶ 3} The MWCD was created as part of a comprehensive flood control and water conservation project in the Muskingum River watershed. The boundaries of the MWCD are determined by the natural flow and drainage of water, and comprise all, or part of, eighteen counties in eastern Ohio. The MWCD is a political subdivision of the State of Ohio, organized under R.C. 6101. The MWCD is governed by a Conservancy Court, made up of one common pleas court judge from each of the eighteen counties. The Conservancy Court appoints a five-person Board of Directors to oversee the operation of the MWCD. The Conservancy Court hears appeals and/or objections to the MWCD's activities. *Page 3 
 {¶ 4} To manage the flow of water in the MWCD, a series of fourteen dams and reservoirs have been constructed. The dams are owned by the United States Army Corps of Engineers (hereinafter "USACE"), and the reservoirs behind them are owned by the MWCD.
 {¶ 5} The dams and reservoirs within the MWCD were designed with a general life expectancy of fifty (50) years, and have reached nearly seventy (70) years of service. They are in significant need of repair, and some are on the nationwide "urgent" list completed by the USACE. The local sponsor's share of the repair work, to be borne by the MWCD as the voluntary local sponsor, is approximately $96 million to $135 million. (Maintenance Project Plan No. 1, Confirm. T. at 6).
 {¶ 6} In addition to the dam repairs, the MWCD maintenance plan also addresses a number of other needed projects, including reservoir maintenance, sediment removal, shoreline protection, and water quality improvements. Remediation of these problem areas accounts for the remainder of the budget ($210 million over 20 years) needed to fund the maintenance plan.
 {¶ 7} Pursuant to R.C. § 6101.53, the MWCD may levy a maintenance assessment in order to "maintain, operate, and preserve" the dams, reservoirs and other improvements constructed under the plan. A maintenance assessment, when levied, must be apportioned on the basis of an official appraisal of benefits performed by the Board of Appraisers of the MWCD.
 {¶ 8} In 2003, as part of the long range planning connected with the work under the Official Plan and the Amendment to the Official Plan, the Board of Directors of the *Page 4 
MWCD petitioned the Conservancy Court for a readjustment of the appraisal of benefits that had originally been done in the 1930s.
 {¶ 9} On June 14, 2003, the Conservancy Court ordered that the BOA should reappraise the benefits of all of the properties located within the MWCD.
 {¶ 10} Over the next 18 months, the BOA formulated a set of billing policies which set forth the methodology to be used to appraise and apportion benefits. (Confirm. T. at 246). To assist in determining the amount of benefits, the BOA enlisted the help of Jack Faucett Associates (JFA), a consulting firm with experience in quantifying the various benefits which result from the kind of projects set forth in the maintenance plan. JFA prepared both a preliminary report and a final report which addressed the monetary value of benefits accruing from the Official Plan of the MWCD, including all amendments, placing the resulting benefits into categories such as existing flood and new flood reduction, access, water quality, water supply, tourism spending, land preservation, environmental quality and construction spending. (Confirm. T. at 253).
 {¶ 11} The BOA evaluated the work of JFA and established an overall amount for the resulting benefits. The BOA apportioned the benefits to the parcels throughout the MWCD, according to a calculation of the projected runoff of water from each parcel. Based on a statistically significant sampling of properties, the BOA determined that a typical residential parcel in the MWCD had 3,300 square feet of impervious area (hard surfaces which create runoff), such as buildings, sidewalks and driveways. The BOA characterized this standardized square footage amount as one equivalent residential unit or "ERU". Under the billing policies, one ERU is attributed to each residential, *Page 5 
vacant or agricultural parcel. There is a $12.00 estimated annual assessment for each ERU. (Confirm. T. at 176).
 {¶ 12} The BOA assigned other types of properties, such as commercial or industrial, a percentage of impervious area based upon standardized calculations of runoff, as set forth in Technical Report No. 55, prepared by the U. S. Department of Agriculture, Soil Conservation Service. For these types of parcels, the ERU calculations were based upon the area of the parcel. The billing policies in place allow for an adjustment to the measured percentage of impervious area, if the standardized calculations are inaccurate.
 {¶ 13} The Board of Directors for the MWCD approved an Amendment to the Official Plan of the District in 2005, recognizing the maintenance and repair work that is needed.
 {¶ 14} On June 11, 2005, the Amendment to the Official Plan was submitted to and approved by the Conservancy Court.
 {¶ 15} On March 9, 2006, the Board of Appraisers filed the Conservancy Appraisal Record (hereinafter "CAR") in each of the 18 counties comprising the MWCD, appraising and apportioning benefits of the MWCD, with legal notice published in 13 newspapers.
 {¶ 16} Pursuant to R.C. § 6101.31, the CAR set forth an appraisal and apportionment of the benefits that result from the Official Plan. This appraisal affected over 500,000 parcels located within the boundaries of the MWCD.
 {¶ 17} Approximately 5,200 landowners exercised their due process rights by filing exceptions to the CAR. All of these exceptions, including the five filed by *Page 6 
Appellants, have been finally determined by the Conservancy Court pursuant to R.C. § 6101.07 and § 6101.33
 {¶ 18} Evidentiary hearings were held by Magistrates who filed Recommendations, Findings of Fact and Conclusions of Law.
 {¶ 19} Appellants filed objections to the Magistrate's Decisions.
 {¶ 20} A three-judge panel of the Conservancy Court denied Appellants' objections.
 {¶ 21} On August 1, 2007, an evidentiary hearing was held before the Conservancy Court, sitting en banc, which confirmed the Conservancy Appraisal Record.
 {¶ 22} Appellants now appeal, assigning as error:
 ASSIGNMENTS OF ERROR {¶ 23} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION BY CONFIRMING THE MARCH 9, 2006 CONSERVANCY APPRAISAL RECORD (CAR), OR AS AMENDED, PURSUANT TO ITS AUGUST 20, 2007 ORDER.
 {¶ 24} "II. THE TRIAL COURT'S AUGUST 20, 2007 RULING AND CONFIRMATION OF THE CAR. IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 25} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION BY CONFIRMING THE VARIOUS MAGISTRATES' DECISIONS AND RECOMMENDATIONS IN THE APPELLANTS' CASES. *Page 7 
 {¶ 26} "IV. THE TRIAL COURT'S VARIOUS RULINGS AND CONFIRMATIONS OF THE MAGISTRATES' DECISIONS AND RECOMMENDATIONS IN THE APPELLANTS' CASES ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 27} "V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION BY OVERRULING THE EXCEPTORS' OBJECTIONS TO THE MAGISTRATES' DECISIONS.
 {¶ 28} "VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION WHEN IT: (1) FOUND NO MATERIAL INCREASE IN DAMAGES; AND, (2) FAILED TO ORDER DAMAGES BE APPRAISED IN ITS JUNE 11, 2005 ORDER.
 {¶ 29} "VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION BY APPROVING AN AMENDED PLAN THAT INCLUDES IMPROVEMENTS BE PAID PURSUANT TO THE MAINTENANCE ASSESSMENT.
 {¶ 30} "VIII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION WHEN IT RULED THE APPELLANTS WERE NOT ENTITLED TO DISCOVERY UNDER TITLE V OF THE CIVIL RULES OF PROCEDURE AND THAT THE CIVIL RULES DO NOT APPLY TO THE PROCEEDINGS.
 {¶ 31} "IX. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION WHEN IT DENIED THE APPELLANTS THE SUBPOENA POWER FOR THE EXCEPTION HEARING.
 {¶ 32} "X. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION AND/OR DENIED THE APPELLANTS DUE PROCESS BY *Page 8 
STAYING THE PROCEEDINGS FOR THE COURT'S CONVENIENCE, AND THEN SUBSEQUENTLY RULING THE CIVIL RULES WERE INAPPLICABLE AND THAT THE APPELLANTS WERE NOT ENTITLED TO ANY DISCOVERY.
 {¶ 33} "XI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION AND/OR DENIED THE EXCEPTOR DUE PROCESS BY ORDERING JUDICIAL NOTICE BE TAKEN OF CERTAIN DOCUMENTS.
 {¶ 34} "XII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION BY CONDUCTING THE AUGUST 1, 2007 CAR. CONFIRMATION HEARING BASED UPON THE MWCD'S JULY 12, 2007 `MAINTENANCE PROJECT PLAN# 1' AND THE J.F.A. REPORT DATED JULY 27, 2007 WHEN ALL THE EXCEPTION HEARINGS CONDUCTED WERE BASED ON THE MWCD MAINTENANCE PLAN ADOPTED JUNE 11, 2005 AND THE JFA REPORT DATED FEBRUARY, 2006."
 {¶ 35} Initially, we begin by noting that Appellants' brief does not comply with the rules for a proper brief set forth in App. R. 16(A). Appellants failed to include in their brief a separate statement of the assignments of error with reference to the place in the record where each is reflected, in violation of App. R. 16(A)(3). Appellants also failed to include a separate statement of the issues presented for review with reference to the assignments of error to which each issue relates, as required by App. R. 16(A)(4). The brief does not include a statement of the facts relevant to assignments of error with references to the record, in contravention of App. R. 16(A)(6). Perhaps most importantly, the brief does not include a separate argument with respect to each assignment of error presented for review and reasons in support thereof, with citations to authorities, *Page 9 
statutes, and portions of the record on which appellant relies, in violation of App. R. 16(A)(7).
 {¶ 36} Pursuant to App. R. 12(A)(2), we are not required to address issues which are not argued separately as assignments of error, as required by App. R. 16(A). Kremer v. Cox (1996), 114 Ohio App.3d 41, 60,682 N.E.2d 1006; Hawley v. Ritley (1988), 35 Ohio St.3d 157, 159,519 N.E.2d 390. Such deficiencies permit this Court to dismiss Appellants' appeal.
 {¶ 37} Notwithstanding the omissions in Appellants' brief, in the interests of justice and finality, we elect to review those issues raised in Appellants' appeal which are discernable as separate assignments of error.
 {¶ 38} Additionally, to the extent that Appellants attempt to incorporate by reference certain arguments contained in other documents, this Court will not consider same. "The Rules of Appellate Procedure do not permit parties to incorporate by reference arguments from other sources." Willow Park Convalescent Home, Inc. v. Crestmont ClevelandPartnership, Cuyahoga App. Nos. 81147, 81259, at ¶ 73, citingKulikowski v. State Farm Mut. Auto. Ins. Co., Cuyahoga App. Nos. 80102, 80103, 2002-Ohio-5460, at ¶ 55. "Pursuant to App. R. 16, arguments are to be presented within the body of the merit brief. Therefore, we will disregard any argument not specifically and expressly addressed in the appellate briefs." Willow Park Convalescent Home, Inc., at ¶ 73.
 {¶ 39} We further note that we will not address any arguments Appellants included in their brief under the section captioned "Controlling Law", as such arguments are not included in Appellants' assignments of errors, and it does not appear that such *Page 10 
were raised before the trial court. "It is well established that a party cannot raise any new issues or legal theories for the first time on appeal." Dolan v. Dolan, 11th Dist. Nos. 2000-T-0154 and 2001-T-0003,2002-Ohio-2440, at ¶ 7, citing Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41, 43, 322 N.E.2d 629. "Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." Nozik v. Kanaga (Dec. 1, 2000), 11th Dist. No. 99-L-193.
 I., II., III., IV., V., VI., VII. {¶ 40} Appellants' first seven assignments of error challenge the methodology used to appraise and apportion the benefits. We shall address them together as both Appellants and Appellee have likewise done.
 {¶ 41} Revised Code Chapter 6101 provides for the creation of Conservancy districts. The Conservancy Act, which is embodied in R.C. § 6101.53 provides:
 {¶ 42} "To maintain, operate, and preserve the reservoirs, ditches, drains, dams, levies, canals, sewers, pumping stations, treatment and disposal works, or other properties or improvements acquired or made pursuant to this chapter, to strengthen, repair, and restore the same, when needed, and to defray the current expenses of the conservancy district, the board of directors of the district may, upon the substantial completion of the improvements and on or before the first day of September in each year thereafter, levy an assessment upon each tract or parcel of land and upon each public corporation within the district, subject to assessments under this chapter, to be known as a conservancy maintenance assessment.* * *"
 {¶ 43} Pursuant to R.C. § 6101.28, the Board of Appraisers is charged with doing the following: *Page 11 
 {¶ 44} "During the preparation of the official plan, the board of appraisers of a conservancy district shall examine and become acquainted with the nature of plans for the improvement and of the lands and other property affected thereby, in order that it may be better prepared to make appraisals.
 {¶ 45} "When the certified copy of the entry of the court approving the official plan is filed with the secretary of the conservancy district, he shall at once notify the board of appraisers, and it shall thereupon appraise the benefits of every kind to all real property within or without the district, which will result from the organization of said district and the execution of the official plan. * * *
 {¶ 46} "The board of appraisers shall also appraise the benefits and damages accruing to municipal corporations, counties, townships, and other public corporations, as political entities, and to this state.
 {¶ 47} "* * *"
 {¶ 48} Appellants argue that the methodology employed by the BOA is unreasonable. Appellants cite a number of cases which deal with special assessments. However, we will limit our focus to those cases which concern the Conservancy Act as this Court has previously recognized that the Supreme Court of Ohio modified the law on assessments in MiamiWatershed Conservancy District v. Ryan (1922), 104 Ohio St.79 to address the "particular situations" arising under the Conservancy Act. SeeMuskingum Watershed Conservancy District v. Clow (1937),57 Ohio App. 132.
 {¶ 49} As this Court stated in the Clow, supra at 139:
 {¶ 50} "It is to be observed that Section 6828-45, General Code, a part of the Conservancy Act, specifically says that: `[t]he said assessments shall be apportioned to *Page 12 
and levied on each tract of land or other property in said district in proportion to the benefits appraised, and not in excess thereof.' **** The framers of the Conservancy Act would appear to have had in mind general conformity to the established law of Ohio with reference to the fixing of benefits in the case of public improvements."
 {¶ 51} Assessments against property, under this act, based on the benefit received from protection afforded the property assessed, are not illegal when there is no unreasonable discrimination in fixing the benefits which the property will receive and such method of assessing property is not in violation of the United States Constitution, Amend. 14. Muskingum Watershed Conservancy Dist. v. Ohio Power Co. (1937),58 Ohio App. 315.
 {¶ 52} In assessing benefits under the conservancy act, rules may properly be formulated by a board of appraisers, and such rules, if reasonable, may not be disregarded in a hearing before the court of common pleas. Miami Conservancy Dist. v. Ryan (1922), 104 Ohio St. 79. The question of the reasonableness of the rules being for the court rather than for the jury. Id.
 {¶ 53} In Ohio Power Co., supra at 318-320, this Court found:
 {¶ 54} "The appellant contends that the appraisers' report is not legal and valid. We might say that a number of rules might have been devised and applied for appraisement purposes, each of which might have worked equally well. We are of the opinion that the rule adopted is an honest attempt to solve the problem, and not only has the appellant failed to suggest a better one, but there is no testimony in the bill of exceptions attempting to prove that it is not both workable and fair, or that the results obtained by its use are not reasonably accurate. *Page 13 
 {¶ 55} * * *
 {¶ 56} "It is not claimed that the rule applied is perfect. But we are of the opinion that it was just and reasonable, and secured a uniform result. It is a controlling fact that though the appellant now complains about it, yet he introduced no evidence at the hearing to controvert its propriety." Id.
 {¶ 57} In the instant case, as set forth supra, the BOA adopted a methodology to apportion the benefits appraised to individual properties relying on the estimated contribution of run-off from each parcel based on its area, property-use classification and the estimated impervious area for that property-use classification. The amount of excess water running off a parcel was determined by calculating the parcel's impervious area (i.e., that portion of the property that cannot absorb or delay the flow of water). The amount of impervious area on a property was estimated based on the property's use classification as determined by the auditor and the average impervious area of a statistical sampling of similarly classified properties, or the impervious area was actually measured, for the most part, by using aerial photography.
 {¶ 58} The Board of Appraisers retained Jack Faucett Associates (JFA) and economist Michael Lawrence to perform a study of all of the benefits which would result from execution of the Official Plan, as is permitted by the Act. JFA determined that the resulting benefit from the execution of the Official Plan would be approximately $18 Billion Dollars. The BOA conservatively reduced the benefits to be apportioned to $2.5 Billion.
 {¶ 59} The arguments presented by Appellants claim that the methodology used by the MWCD is unreasonable because it uses a flat-rate assessment, utilizes two *Page 14 
different storm water run-off calculations for two different purposes, and discriminates against small parcel property owners. Appellants further argue that the methodology used by the MWCD used three different sets of rules to determine benefit assessments.
 {¶ 60} In support of their arguments as to the unreasonableness of the methodology, Appellants presented the testimony of Phillip DeGroot, Ph.D., a hydrologist, at Appellant Blackwell's exception hearing, who stated that the methodology used by the BOA failed to consider run-off contribution of large agricultural or vacant land parcels, which would result in small property owners being overcharged and large property owners being undercharged.
 {¶ 61} Jim Rozell, interim Chief Engineer for the MWCD, testified that Dr. DeGroot's methodology was unreasonable, stating that vacant and agricultural land absorbs rainwater and does not produce the immediate runoff attributed to impervious areas. (Conf. T. at 218-219). He testified that all properties in the MWCD receive a benefit, whether the property lies above or below the dams, as each contributes to the amount of run-off that the system has to control. (Conf. T. at 219-220, 239-241).
 {¶ 62} Michael Lawrence, an economist with JFA, testified that even if all property owners would not directly receive benefits in the form of flood reduction, all of the property owners in the District would receive the following benefits: access, water quality, water supply availability and use, tourism, spending, land preservation, environmental quality, and construction impacts. (Conf. T. at 285).
 {¶ 63} Additionally, John Hoopingarner, the Executive Director of the MWCD, testified that all of the properties within the District, including those whose runoff does not flow directly into the reservoir or behind a dam, do in fact receive a benefit because *Page 15 
the direct control of runoff of other properties within the District allows the runoff of other properties to flow unimpeded. (Blackwell Hrng. T. at 279).
 {¶ 64} Based on the foregoing, we find that the Conservancy Court did not err in accepting the methodology employed by the BOA was reasonable. The mere existence of another method that could have been used by the BOA does not make the current methodology unreasonable.
 {¶ 65} Consequently, we do not find that the method adopted by the board of appraisers in levying the assessments was manifestly and unreasonably discriminatory.
 {¶ 66} Appellants' Assignments of Error I through VII are overruled.
 VIII., IX., X. {¶ 67} In their Eighth, Ninth, and Tenth assignments of error, Appellants argue that the Conservancy Court erred in holding that the Civil Rules do not apply to the exception hearings conducted pursuant to R.C. § 6101.33.
 {¶ 68} Upon review of Appellants' brief, we find Appellants have failed to provide any separate arguments in relation to these three assignments of error, instead, intermingling said arguments together with their argument in support of Assignment of Error XI.
 {¶ 69} Again, this Court will, to the best of its ability, try to glean Appellants' arguments in support of these assignments from the arguments contained in this section of Appellants' brief.
 {¶ 70} A trial court has broad discretion to regulate discovery proceedings. Hahn v. Satullo (2004), 156 Ohio App.3d 412, 431,806 N.E.2d 567 citing Van-Am. Ins. Co. v. Schiappa (1999),132 Ohio App.3d 325, 330, 724 N.E.2d 1232. Absent an abuse of *Page 16 
discretion, an appellate court must affirm a trial court's disposition of discovery issues. Van-Am. Ins. Co. at 330. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 71} We shall begin our analysis with a review of Civil Rule 1,Scope of rules: applicability; construction; exceptions, which provides, in pertinent part:
 {¶ 72} "(C) Exceptions
 {¶ 73} "These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure . . . (7) in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference to the statutes governing procedure in civil actions such procedure shall be in accordance with these rules."
 {¶ 74} There appears to be no argument that the exception hearings are "special statutory proceedings".
 {¶ 75} However, the Ohio Supreme Court has stated, "Civ. R. 1 is clearly a rule of inclusion rather than exclusion. * * * To the extent that the issue in question is procedural in nature, the Civil Rules should apply unless they are `clearly inapplicable.'" Robinson v. B.O.C.Group (1998), 81 Ohio St.3d 361, 370, 691 N.E.2d 667, quoting Price v.Westinghouse Elec. Corp. (1982), 70 Ohio St.2d 131, 132, 24 O.O.3d 237,435 N.E.2d 1114. The term "clearly inapplicable" has been interpreted to mean that the courts should refrain from employing a particular civil rule "only when [its] use will alter *Page 17 
the basic statutory purpose for which the specific procedure was originally provided in the special statutory action." Robinson,81 Ohio St.3d at 370, 691 N.E.2d 667, quoting Price, 70 Ohio St.2d at 133,24 O.O.3d 237, 435 N.E.2d 1114. Additionally, the 1970 Staff Notes to Civ. R. 1 explain that "the Civil Rules will be applicable to special statutory proceedings adversary in nature unless there is a good and sufficient reason not to apply the rules."
 {¶ 76} R.C. § 6101.33, Hearing on appraisals; filing exceptions, provides:
 {¶ 77} "Any property owner or public corporation may accept the appraisals in its favor of benefits, of damages, and of lands to be taken made by the board of appraisers of a conservancy district, or may acquiesce in the board's failure to appraise damages in its favor, and shall be construed to have done so unless, within thirty days after thepublication provided for in section 6101.32 of the Revised Code, or such additional time as may be granted by the presiding judge of the court, the property owner or public corporation files exceptions to the report or to any appraisal of benefits, damages, or land to be taken that may be appropriated. All exceptions shall be heard by the court beginningnot less than forty or more than fifty days after the publicationprovided for in that section, and determined in advance of otherbusiness so as to carry out, liberally, the purposes and needs of thedistrict. The court shall provide for the hearing on the exceptions in the county seat of each county in which property is located with respect to which an exception or exceptions have been filed at a time and place fixed by the court. Notice of the time and place of the hearing of an exception shall be given the exceptor in such manner as the court may direct. The hearing conducted in a particular county *Page 18 
shall be limited to testimony presented by the district and by exceptors whose exceptions relate to property located within that county.
 {¶ 78} "The court may, if it considers it necessary, appoint one or more magistrates, each to be assigned by the court to conduct one or more of the hearings on exceptions required by this section, to make a record of each of the hearings, and to report the record, together with findings and recommendations, back to the court. The magistrates shall have the usual powers possessed by magistrates, shall have the cooperation of the officials of the district in determining any facts relative to the conservancy appraisal record, and may use any abstracts, title certificates, title reports, or other information that the district has relative to any of the properties included in the appraisal record. * * *" (emphasis added).
 {¶ 79} As set forth above, R.C. § 6101.33 provides a streamlined, procedural timeline for exception hearing proceedings. Applying traditional discovery, as set forth in the Civil Rules of Procedure, would alter and all but obliterate the procedure set forth therein.
 {¶ 80} We further find that, even given the abbreviated procedure provided for the exception hearing process as set forth in R.C. Chapter 6101, Appellants' due process rights were not violated in that they were given notice and a right to be heard.
 {¶ 81} Upon review, we believe that there exists a good and sufficient reason why discovery under the Civil Rules should not apply to exception hearings in the cases before us. We find that the application of the discovery rules would alter the basic statutory purpose for which R.C. § 6101.33 was originally enacted.
 {¶ 82} Appellant's Assignments of Error XIII, IX and X are hereby overruled. *Page 19 
 XI. {¶ 83} In their Eleventh assignment of error, Appellants argue that the Conservancy Court erred in taking judicial notice of the JFA Benefits Study Report.
 {¶ 84} Appellants argue that such judicial notice of said report "precluded any cross-examination" and denied them due process. (See Appellants' Brief at 45).
 {¶ 85} The admission of evidence also lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion which created material prejudice. State v. Gross (2002), 97 Ohio St.3d 121,2002-Ohio-5524, ¶ 43. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 86} R.C. § 6101.33, as set forth supra, states that at the exception hearings, "[t]he magistrates shall have the usual powers possessed by magistrates, shall have the cooperation of the officials of the district in determining any facts relative to the conservancy appraisal record, and may use any abstracts, title certificates, title reports, or other information that the district has relative to any of the properties included in the appraisal record."
 {¶ 87} We are persuaded by Appellee's argument that because the JFA Report is related to the determination of benefits as set forth in the CAR, it falls within the type of documents anticipated by the statute.
 {¶ 88} Upon review, we further find Appellants' due process rights were not violated as Appellants did have the opportunity to cross-examine the author of the JFA Report at the hearing held before the Conservancy Court on August 1, 2007. *Page 20 
 {¶ 89} Appellants' Assignment of Error XI is overruled.
 XII. {¶ 90} In their twelfth and final assignment of error, Appellants argue that the trial court erred in conducting the CAR confirmation hearing based on the MWCD's July 12, 2007 "Maintenance Project Plan #1" and the JFA report dated July 27, 2007.
 {¶ 91} Appellants argue that all of the exceptions heard by the Conservancy Court were conducted using the Amended Plan and the February 22, 2006, JFA report, but that at the August 1, 2007, CAR confirmation hearing, the MWCD instead presented the "Maintenance Project Plan #1" and the July 7, 2007, JFA report in support of the CAR. Appellants argue that the BOA should have started the appraisal process over, given new notice, begun the exception process anew and that the CAR should have been recalculated. Appellants argue that their rights to due process were therefore violated.
 {¶ 92} Upon review, we find that the original Benefit Study, as prepared by JFA, found in excess of 20 Billion Dollars in benefits would be realized from the Official Plan. As stated above, the BOA used a more conservative figure of 2.5 Billion Dollars as the amount of benefits to be apportioned by the CAR. The final updated Benefit Study was based on up-to-date data and included construction costs.
 {¶ 93} The final Benefit Study supported the earlier conclusion that at least 2.5 Billion Dollars in benefits would result and that the benefits from implementation of the Official Plan would exceed the costs of the improvements. Upon review we find that because the final Benefit Study supported the benefits that were apportioned by the BOA in the CAR, the MWCD was not required to re-file the CAR. We likewise find, *Page 21 
upon reviewing R.C. § 6101.53, et seq., that the adoption of the Maintenance Project Plan did not require re-calculation of the CAR. We also find that the maintenance plan was not required to be included in an amendment to the Official Plan or approved by the Conservancy Court. We do not find anything in R.C. Chapter 6101 that requires a detailed written plan for spending funds for the maintenance and work under the plan.
 {¶ 94} Appellants also argue that the Conservancy Court was required to hear and decide all exception hearings prior to conducting the CAR confirmation hearing.
 {¶ 95} Revised Code § 6101.34, provides:
 {¶ 96} "If it appears to the satisfaction of the court after having heard and determined all the exceptions filed pursuant to section 6101.33 of the Revised Code that the estimated cost of constructing the improvement contemplated in the official plan is less than the benefits appraised, then the court shall approve and confirm the report of the board of appraisers of a conservancy district as modified and amended, and, except as otherwise provided in sections 6101.43, 6101.54, 6101.60, and 6101.78 of the Revised Code, such findings and appraisals are final and incontestable. In considering the appraisals made by the board, the court shall take cognizance of the official plan and of the degree to which it is effective for the purposes of the district. If the court finds that the estimated benefits appraised are less than the total costs of the execution of the official plan, exclusive of interest on deferred payments, it shall disapprove the report of the board of appraisers and may return said official plan to the board of directors of the conservancy district with the order for it to prepare new or amended plans or it may disorganize the district after having provided for the payment of all expenditures." *Page 22 
 {¶ 97} Magistrates heard 5,239 exceptions filed pursuant to the above statute. At the time of the August 1, 2007, Confirmation hearing, all but 39 had been decided by the magistrates and considered by a three-judge panel. Those 39 exceptions were decided by the three-judge panel on August 3, 2007, two days after the Confirmation hearing. The Conservancy Court approved the CAR on August 20, 2007.
 {¶ 98} R.C. § 6101.43, Proceedings not invalid except when defectresults in denial of justice, provides:
 {¶ 99} "No fault in any notice or other proceedings, whether by reason of noncompliance with the requirements of this chapter or with any applicable constitutional requirements, or otherwise, shall affect the validity of any proceeding under this chapter, except to the extent to which it can be shown that the fault resulted in a material denial of justice to the property owner or public corporation complaining of the fault."
 {¶ 100} While we find that all of the exceptions may not have been heard and determined at the time of the Confirmation Hearing, same had all been heard and determined prior to approval and confirmation by the Conservancy Court and that no "material denial of justice" occurred.
 {¶ 101} Upon review, we fail to find where and how Appellants have not been accorded every substantial consideration of their rights of due process of law. *Page 23 
 {¶ 102} Appellants' Assignment of Error XII is overruled.
 {¶ 103} For the foregoing reasons, the judgment of the Court of Common Pleas, Conservancy Division, Tuscarawas County, Ohio, is affirmed.
By: Wise, J. Hoffman, P. J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Conservancy Division, Tuscarawas County, Ohio, is affirmed.
 Costs assessed to Appellants. *Page 1