HAHN et al., Appellants and Cross–Appellees,

v.

SATULLO and Reminger & Reminger Co., L.P.A., Appellees and Cross–Appellants; Reliance Insurance Company, Appellee.

[Cite as Hahn v. Satullo, 156 Ohio App.3d 412, 2004-Ohio-1057.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–259.

Decided March 9, 2004.

414

---

Michael Hahn and Marie Hahn, pro se.

T. Leigh Anenson; Reminger & Reminger Co., L.P.A., and Joseph W. Borchelt, for appellees and cross-appellants Nicholas D. Satullo and Reminger & Reminger Co., L.P.A.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Robert F. Brown, for appellee Reliance Insurance Company.

---

PETREE, Judge.

{¶ 1} Plaintiffs-appellants ("plaintiffs"), Michael and Marie Hahn, pro se litigants, appeal from a judgment of the Franklin County Court of Common Pleas

that granted summary judgment in favor of defendants-appellees, Nicholas Satullo and Reminger & Reminger Co., L.P.A. ("Reminger & Reminger"). Defendants Satullo and Reminger & Reminger cross-appeal. Because we find no reversible error, we affirm.

{¶ 2} According to plaintiffs, attorney Tobias Elsass initially represented plaintiffs in a suit against Star Bank in federal district court, wherein plaintiffs' bank credit file was the subject of litigation. Plaintiffs also retained Elsass in a suit against Domtar Gypsum that was prosecuted before the Sixth Circuit Court of Appeals.

{¶ 3} However, because Elsass was subsequently suspended from the practice of law, plaintiffs later retained attorneys Philip Collins and Douglas Jennings to represent plaintiffs before the Sixth Circuit Court of Appeals in plaintiffs' suit against Domtar Gypsum.

{¶ 4} On or about August 19, 1999, plaintiffs notified Collins and Jennings of an impending legal malpractice action against them. Reliance Insurance Company ("Reliance"), Collins and Jennings's malpractice insurer, then retained the law firm of Reminger & Reminger to defend Collins and Jennings. Attorney Nicholas D. Satullo of Reminger & Reminger was designated to represent Collins and Jennings.

{¶ 5} On November 30, 1999, on behalf of plaintiffs, attorney D. Joe Griffith sued Collins, Jennings, and others for legal malpractice. Because Satullo represented attorneys Collins and Jennings, Collins and Jennings forwarded to Satullo plaintiffs' Domtar Gypsum case file for use in Collins and Jennings' defense.

{¶ 6} According to plaintiffs, during discovery in plaintiffs' legal malpractice action against attorneys Collins and Jennings, Griffith, on several occasions, requested Satullo to send the original case file pertaining to the Domtar Gypsum case. In January 2000, Satullo forwarded a copy of the Domtar Gypsum case file to Griffith. Satullo kept the original Domtar Gypsum case file, which Satullo had received from attorneys Collins and Jennings.

{¶ 7} Upon inspection of the copied case file that Satullo sent to Griffith, plaintiffs discovered a copy of their entire Star Bank credit file, which allegedly consisted of more than 400 pages of private and confidential documents and which plaintiffs claim should not have been included in the Domtar Gypsum case file, was included in the copied Domtar Gypsum case file that Satullo sent to Griffith.

{¶ 8} Subsequently, plaintiffs retrieved from Elsass the case file pertaining to the Star Bank litigation in which plaintiffs' bank credit file was the subject of litigation. After reviewing the case file, plaintiffs discovered that the case file was complete, except for the missing bank credit file.

{¶ 9} On or about April 5, 2000, attorney Griffith sent a copy of the Domtar Gypsum case file to attorney Satullo in exchange for the original file.[1] (Affidavit of D. Joe Griffith dated August 20, 2002, at paragraph 16.) Prior to forwarding a copy of the Domtar Gypsum case file, attorney Griffith removed copies of the Hahns' TRW credit report, tax returns, loan applications, and updated financial statements because Griffith believed that defendants were not entitled to these documents. (See letter dated April 5, 2000, from attorney Griffith to attorney Satullo; Griffith affidavit dated August 20, 2002, at paragraph 16.)

{¶ 10} Later, on April 12, 2000, plaintiffs moved for a protective order and requested return of the original Domtar Gypsum case file and the entire Star Bank credit file. On June 30, 2000, the trial court granted plaintiffs' motion for a protective order.

{¶ 11} According to plaintiffs, after the trial court granted plaintiffs' motion for a protective order, Satullo returned only portions of the disputed file to plaintiffs. (Affidavit of D. Joe Griffith dated August 20, 2002, at paragraphs 20 and 21.) Moreover, according to plaintiffs, the portions of the file that Satullo returned contained some of the pages that attorney Griffith had removed prior to sending Satullo the copied Domtar Gypsum case file on or about April 5, 2000, thereby suggesting that Satullo made copies of plaintiffs' bank credit file despite Griffith's request not to do so. (Griffith affidavit dated August 20, 2002, at paragraph 22; letter dated March 9, 2000, from attorney Griffith to attorney Satullo.)

{¶ 12} Furthermore, according to plaintiffs, after Satullo forwarded to Griffith the original Domtar Gypsum case file that included plaintiffs' bank credit file, at Satullo's request, Griffith then forwarded to Satullo a copy of the Domtar Gypsum case file and a copy of the bank credit file. (Complaint, at paragraph 21.) According to plaintiffs, Satullo claimed that the Star Bank credit file was part of the case file pertaining to the Domtar Gypsum case, and Satullo claimed that he was entitled to these documents. Id.

{¶ 13} Defendants Satullo and Reminger & Reminger dispute plaintiffs' allegation that they returned only a portion of the Domtar Gypsum case file.[2]

---

1. Apparently attorney Griffith forwarded a copy of the Domtar Gypsum case file to attorney Satullo prior to receiving the original case file from Satullo. (See Affidavit of D. Joe Griffith dated August 20, 2002, at paragraph 15 [averring receipt of Domtar Gypsum case file on April 10, 2000].)

2. See, e.g., letter dated October 10, 2000, from attorney Satullo to attorney D. Joe Griffith ("[P]ursuant to the court's prior order, I tendered to you all documents that I had in my file concerning your clients' credit report matters. * * * If there is any issue of noncompliance with what the court previously ordered regarding the credit information, I ask that you tell me what specifically we should be looking for in our file, and, as stated, I will do that again. * * *"); and letter dated January 10, 2001, from attorney Satullo to attorney Griffith ("With

Defendants Satullo and Reminger & Reminger also dispute plaintiffs' allegation that after Satullo forwarded to Griffith the original Domtar Gypsum case file, at Satullo's request, Griffith then forwarded to Satullo a copy of the Domtar Gypsum case file and a copy of the bank credit file.[3]

{¶ 14} On July 26, 2001, plaintiffs filed a complaint in the Franklin County Court of Common Pleas, wherein plaintiffs alleged that attorney Nicholas Satullo violated the Fair Credit Reporting Act ("FCRA"), Section 1601, Title 15, U.S.Code et seq.; Satullo without plaintiffs' authorization reviewed and disclosed plaintiffs' income tax returns; Satullo without plaintiffs' authorization used and disclosed plaintiffs' Social Security numbers; and Satullo invaded plaintiffs' privacy.

{¶ 15} Plaintiffs theorized in their complaint that, at some point, Elsass transferred plaintiffs' entire bank credit file to attorneys Collins and Jennings for Collins and Jennings's use in defense of plaintiffs' legal malpractice action against Collins and Jennings. (Complaint at paragraph 11.) Defendants Satullo and Reminger & Reminger deny this allegation.

{¶ 16} On September 27, 2001, pursuant to Civ.R. 12(C), defendants Satullo and Reminger & Reminger moved for judgment on the pleadings. On October 4, 2001, plaintiffs moved for a protective order, wherein plaintiffs alleged that defendants Satullo and Reminger & Reminger failed to comply with the court's protective order in the legal malpractice case that ordered the return of plaintiffs' financial information to plaintiffs.

{¶ 17} On November 14, 2001, the trial court denied plaintiffs' motion of October 4, 2001, for a protective order. In denying plaintiffs' motion, the trial court observed that "[r]ather than asking for protection against discovery sought in this case, the motion asks for return of documents provided in discovery in another case. That is not the purpose of a Civil Rule 26(C) motion for protective order." (Entry dated November 14, 2001.)

{¶ 18} In its entry of November 14, 2001, the trial court also recognized a Pennsylvania court's order that liquidated Reliance Insurance Company and

---

regard to the documents you believe are still in our possession, I am having my paralegal look through the file yet again. Maybe they are there and we missed them. If so, I will be happy to return them to you, inasmuch as I never asked for that file, and the only reason I had it was because your clients gave it to Tobias Elsass to begin with.").

**3.** See, e.g., letter dated April 5, 2000, from attorney D. Joe Griffith to attorney Satullo ("[E]nclosed are the copies of documents which I have agreed to exchange with you for Mr. and Mrs. Hahn's original file, with the exception that I have pulled from the file copies of Mr. and Mrs. Hahn's TRW Credit Report, tax returns, loan applications and updated financial statements which I do not believe were properly in your possession.").

stayed pending actions against Reliance. Accordingly, the trial court bifurcated the case by separating and staying plaintiffs' claims against Reliance.

{¶ 19} On April 16, 2002, the trial court partially granted defendants Satullo and Reminger & Reminger's motion for judgment on the pleadings, dismissing plaintiffs' claims pertaining to unauthorized review and disclosure of income tax returns and Social Security numbers.

{¶ 20} Defendants Satullo and Reminger & Reminger later moved for summary judgment.

{¶ 21} On December 16, 2002, finding that Satullo and Reminger & Reminger did not violate the FCRA or invade plaintiffs' privacy, the trial court partially granted Satullo and Reminger & Reminger's motion for summary judgment. The trial court denied Satullo and Reminger & Reminger's summary judgment motion "as to whether there has been an invasion of privacy by an alleged retention of in excess of 300 pages of the credit file, or alternatively, as to whether Defendants' conduct after the Court order is protected by an attorney's absolute or qualified privilege." (Decision and Entry filed December 16, 2002, at 9.)

{¶ 22} Subsequently, both plaintiffs and defendants Satullo and Reminger & Reminger moved the trial court to reconsider its decision of December 16, 2002.

{¶ 23} On January 15, 2003, upon reconsideration, the trial court granted Satullo and Reminger & Reminger's motion for reconsideration and also granted summary judgment in favor of defendants Satullo and Reminger & Reminger as to all plaintiffs' claims. In its decision and entry, the trial court "[held] that an attorney's failure to return documents to an opposing party after being ordered to do so by a court, whether or not intending to violate the court order, is conduct that is 'reasonably related' to the litigation. Hence, absolute immunity applies in this case to bar Plaintiff's [sic] invasion of privacy claim." (Decision and Entry filed January 15, 2003, at 4.)

{¶ 24} On February 18, 2003, plaintiffs appealed from the trial court's entries of April 16, 2002, December 16, 2002, and January 15, 2003. This court sua sponte dismissed the appeal for lack of a final appealable order.

{¶ 25} On March 18, 2003, after the trial court journalized a final order, plaintiffs again appealed. Defendants Satullo and Reminger & Reminger cross-appealed.

{¶ 26} Pursuant to Loc.R. 9(D) of the Tenth District Court of Appeals, defendant Satullo moved to dismiss plaintiffs' appeal for failure to timely file a brief and assignments of error. This court denied Satullo's motion to dismiss plaintiffs' appeal.

{¶ 27} On June 2, 2003, plaintiffs moved to strike Satullo and Reminger & Reminger's cross-appeal due to an alleged violation of App.R. 3(C)(1), which provides that a party that intends to defend a judgment and that seeks to change that judgment shall file a notice of cross-appeal within the time allowed by App.R. 4. Additionally, in a reply memorandum, plaintiffs also alleged that defendants violated Loc.R. 7(E) of the Tenth District Court of Appeals, which requires the attachment of unpublished opinions to briefs filed in this court. However, in their reply memorandum, plaintiffs admitted that after much effort, they obtained copies of the unpublished opinions that plaintiffs claim were not attached to defendants' brief.

{¶ 28} App.R. 3(C)(2) provides that "[a] person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal." Here, defendants Satullo and Reminger & Reminger seek to defend the trial court's judgment, although they seek to change some of the reasons underlying the trial court's judgment. Therefore, pursuant to App.R. 3(C)(2), we conclude that defendants are not required to file a notice of cross-appeal in this case.

{¶ 29} Furthermore, because after much effort plaintiffs obtained the unpublished opinions that they allege were not attached to defendants' brief, we find substantial prejudice did not result, and we do not find that plaintiffs' allegation related to Loc.R. 7(E) is persuasive.

{¶ 30} Accordingly, plaintiffs' motion to strike is denied. However, we remind the parties that they carefully should follow the Ohio Rules of Appellate Procedure and this court's local rules for the purpose of promoting the administration of justice and eliminating undue delay. Cf. Civ.R. 1(B); Crim.R. 1(B); Evid.R. 102; Juv.R. 1(B).

{¶ 31} In their appeal, plaintiffs assert six assignments of error:

"ASSIGNMENT OF ERROR NO. 1: The Trial Court Erred as a Matter of Law in the Judgment Entry, Dated April 16, 2002, * * * in Finding That the Court Could Not Hear a Separate Cause of Action Pursuant to O.R.C. § 5747.18.

"ASSIGNMENT OF ERROR NO. 2: The Trial Court Erred as a Matter of Law in the Judgment Entry, Dated December 16, 2002 * * * In Granting Summary Judgments to Defendants in Finding That Defendants did not Wrongfully Obtain or Use Plaintiffs' Credit Report in Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f), When the Evidence Presents Genuine Issues of Material Fact as to Defendants' Receipt and Use of Plaintiffs' Credit Report.

"ASSIGNMENT OF ERROR NO. 3: The Trial Court Erred in the Judgment Entry, Dated December 16, 2002 * * * In Granting Summary Judgment to Defendants As to 'Whether Defendants Invaded Plaintiffs' Privacy By Their Conduct Prior To Their Return of 89 Pages Of The Credit File.'

"ASSIGNMENT OF ERROR NO. 4: The Trial Court Erred in the Judgment Entry, Dated January 15, 2003 * * * in Granting Summary Judgment and Absolute Immunity to Defendants For Their Intentional or Unintentional Violation of a Court Order Thus Barring Plaintiffs' Invasion of Privacy Claim.

"ASSIGNMENT OF ERROR NO. 5: The Trial Court Erred in the Judgment Entries Dated December 16, 2002 and January 15, 2003 * * * in Granting Summary Judgment to Defendants By Weighing The Evidence in Favor of Defendants and Deciding the Credibility of Affiants, D. Joe Griffith, Esq., in His Affidavit and Supplemental Affidavit, and Nicholas D. Satullo, Esq., in His Affidavit, Which Are In Conflict and Which Conflict Creates Genuine Issues of Material Fact.

"ASSIGNMENT OF ERROR NO. 6: The Trial Court Erred in the Judgment Entry, Dated January 15, 2003 * * * In Depriving Plaintiffs of the Due Process Which The Protective Order Afforded By Granting Defendants Absolute Immunity For Violating the Court Order."

{¶ 32} Defendants Satullo and Reminger & Reminger cross-appeal as follows:

"CROSS ASSIGNMENT OF ERROR NO. 1

"The trial court erred in holding appellees are not entitled to qualified immunity from appellants' invasion of privacy claims.

"CROSS ASSIGNMENT OF ERROR NO. 2

"The trial court erred in holding that appellees are not entitled to absolute or qualified immunity from appellants' FCRA claims."

{¶ 33} Appellate review of a lower court's granting of summary judgment is de novo. *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093, at ¶ 27. " '*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.' " Id., quoting *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 973. Summary judgment is proper when a movant for summary judgment demonstrates that (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary

judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 34} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264; *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164; Civ.R. 56(E).

{¶ 35} Moreover, "[a]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. See, also, *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, quoting *Anderson*, supra (discussion of materiality of facts); Civ.R. 56 staff notes (Ohio summary judgment rule based upon Fed.R.Civ.P. 56).

{¶ 36} Plaintiffs' first assignment of error asserts that the trial court erred when it determined that plaintiffs could not bring a separate cause of action pursuant to R.C. 5747.18.

{¶ 37} R.C. 5747.18,[4] which was in effect at the time of plaintiffs' suit, provides: "The tax commissioner shall enforce and administer this chapter. In addition to any other powers conferred upon the commissioner by law, the commissioner may:

"* * *

"(C) Appoint and employ such personnel as are necessary to carry out the duties imposed upon the commissioner by this chapter.

"Any information gained as the result of returns, investigations, hearings, or verifications required or authorized by this chapter is confidential, and no person shall disclose such information, except for official purposes, or as provided by section 3125.43, 4123.591, 4507.023, or 5101.182, division (B) of section 5703.21 of the Revised Code, or in accordance with a proper judicial order. The tax commissioner may furnish the internal revenue service with

---

4. Between 1995 and 2000, R.C. 5747.18 was amended five times; these amendments primarily changed statutory references within R.C. 5747.18. However, for purposes of this analysis, the substantive nature of R.C. 5747.18 has remained unchanged.

copies of returns or reports filed and may furnish the officer of a municipal corporation charged with the duty of enforcing a tax subject to Chapter 718. of the Revised Code with the names, addresses, and identification numbers of taxpayers who may be subject to such tax. A municipal corporation shall use this information for tax collection purposes only. This section does not prohibit the publication of statistics in a form which does not disclose information with respect to individual taxpayers."

{¶ 38} "The primary duty of a court in construing a statute is to give effect to the intention of the legislature enacting it. In determining that intention, a court should consider the language used and the apparent purpose to be accomplished, and then such a construction should be adopted which permits the statute and its various parts to be construed as a whole and gives effect to the paramount object to be attained." *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 133 N.E.2d 780, citing *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871. Moreover, "[i]n reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347, citing *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 89, 438 N.E.2d 410.

{¶ 39} Plaintiffs contend that R.C. 5747.18(C) provides plaintiffs with a cause of action against defendants Satullo and Reminger & Reminger based on Satullo's alleged disclosure of plaintiffs' state income tax returns and Social Security numbers. Specifically, in support of their contention, plaintiffs rely upon the following excerpt from R.C. 5747.18(C): "[N]o person shall disclose such information, except for official purposes, or as provided by section 3125.43, 4123.591, 4507.023, or 5101.182, division (B) of section 5703.21 of the Revised Code, or in accordance with a proper judicial order."

{¶ 40} When construing a statute, the primary duty of the court is to give effect to the intention of the General Assembly. *Humphrys,* 165 Ohio St. at 49, 59 O.O. 65, 133 N.E.2d 780; *Wilson,* 77 Ohio St.3d at 336, 673 N.E.2d 1347. Based upon the express language of R.C. 5747.18, the intention of the General Assembly in enacting R.C. 5747.18 was to provide the Tax Commissioner with enforcement and administration authority for R.C. Chapter 5747. See R.C. 5747.18 ("The tax commissioner shall enforce and administer this chapter.").

{¶ 41} To this end, R.C. 5747.18(C) allows the Tax Commissioner to appoint personnel to assist him or her with the duties imposed by R.C. Chapter 5747, such as reviewing tax returns, and conducting investigations, hearings, or verifications. Within this context, R.C. 5747.18(C) provides that "no person shall disclose such information, except for official purposes, or as provided by section

3125.43, 4123.591, 4507.023, or 5101.182, division (B) of section 5703.21 of the Revised Code, or in accordance with a proper judicial order."

{¶ 42} When R.C. 5747.18 is construed as a whole, and based upon the apparent purpose of R.C. 5747.18, we find that R.C. 5747.18 does not create a cause of action against parties, such as defendants Satullo and Reminger & Reminger, who are not appointed by the Tax Commissioner to carry out the duties imposed by R.C. Chapter 5747. To adopt plaintiffs' construction of R.C. 5747.18 would impermissibly disassociate R.C. 5747.18(C) from its context and impermissibly invite piecemeal interpretation of R.C. 5747.18. See *Wilson,* supra, 77 Ohio St.3d at 336, 673 N.E.2d 1347, citing *MacDonald,* supra, 1 Ohio St.3d at 89, 1 OBR 122, 438 N.E.2d 410 ("In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.").

{¶ 43} Accordingly, plaintiffs' first assignment of error is not persuasive and is overruled.

{¶ 44} Plaintiffs' second assignment of error asserts that the common pleas court erred when it found that defendant Satullo did not wrongfully obtain or use plaintiffs' credit report in violation of Section 1681b(f) of the FCRA. Specifically, plaintiffs contend that the evidence presents genuine issues of material fact as to whether defendant Satullo received or used plaintiffs' credit report.

{¶ 45} Pursuant to Section 1681b(f) of the FCRA[5]:

"A person shall not use or obtain a consumer report for any purpose unless—

"(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

"(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." See, also, Section 1681a(b) of the FCRA (defining "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity"); Section 1681a(d) (definition of "consumer report"). See, also, *Jones v. Federated Fin. Res. Corp.* (C.A.6, 1998), 144 F.3d 961, 964 (FCRA should be liberally construed in favor of the consumer and in a manner consistent with the statute's other provisions).

{¶ 46} As stated in *Jones,* supra, "[t]he FCRA's express language imposes civil liability on 'any consumer reporting agency or user,' which is either negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, in failing to comply with any

---

5. FCRA was amended by P.L. 108–177, 117 Stat. 2599, approved December 13, 2003. However, Section 1681b(f) of the FCRA was unaffected by this amendment. FCRA was also amended by P.L. 107–306, 116 Stat. 2426, approved November 27, 2002. Section 1681b(f) of the FCRA was unaffected by this amendment as well.

requirement imposed under the FCRA." (Footnotes omitted.) Id., 144 F.3d at 964. Moreover, "[t]he remedies available to the consumer vary based on the nature of the violation. Whereas a *willful* violation can give rise to liability for actual damages or statutory damages, as well as punitive damages, costs, and reasonable attorneys' fees, [FCRA] § 1681n(a), a violation that is merely *negligent* results in liability only for actual damages, costs, and fees, *id.* § 1681o." (Emphasis sic.) *Sather v. Weintraut* (July 10, 2003), D.Minn. No. Civ. 01–1370(JNE/JGL), 2003 WL 21692111.

{¶ 47} Here, we construe plaintiffs' complaint to allege that defendant Satullo intentionally or negligently violated the FCRA.[6]

{¶ 48} According to the FCRA, the term "consumer report" is statutorily defined in Section 1681a, which provides:

"(1) **In general.**—The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

"(A) credit or insurance to be used primarily for personal, family, or household purposes;

"(B) employment purposes; or

"(C) any other purpose authorized under section 1681b of this title.

"(2) **Exclusions.**—The term 'consumer report' does not include—

"(A) any—

"(i) report containing information solely as to transactions or experiences between the consumer and the person making the report;

"(ii) communication of that information among persons related by common ownership or affiliated by corporate control; or

"(iii) communication of other information among persons related by common ownership or affiliated by corporate control, if it is clearly and conspicuously disclosed to the consumer that the information may be communicated among such persons and the consumer is given the opportunity, before the time that

---

**6.** See Complaint at paragraph 29 (alleging that "Defendant Satullo intentionally, 15 USCS § 1681n./negligently, 15 USCS § 1681o. violated the provisions of the Fair Credit Reporting Act"). See, also, Civ.R. 8(F) ("[a]ll pleadings shall be so construed as to do substantial justice"); *MacDonald,* supra, 1 Ohio St.3d at 86, 1 OBR 122, 438 N.E.2d 410, fn. 1 ("this court is mindful of the basic and general rule that pleadings shall be construed so as to do substantial justice and to that end, shall be construed liberally in order that the substantive merits of the action may be served").

the information is initially communicated, to direct that such information not be communicated among such persons;

"**(B)** any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device;

"**(C)** any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 1681m of this title; or

"**(D)** a communication described in subsection (*o*) of this section. (Footnote omitted.) See, also, Section 1681a(g) (definition of the term "file").

{¶ 49} Here, the record does not contain a copy of plaintiffs' bank credit file. Nor does the record contain evidence that the trial court conducted an in camera inspection of plaintiffs' bank credit file. Thus, absent a copy of plaintiffs' bank credit file, it cannot be determined whether plaintiffs' bank credit file, or any portion of plaintiffs' bank credit file, properly can be considered a "consumer report" as this term is defined in Section 1681a(d) of the FCRA.

{¶ 50} Therefore, absent any evidence in the record that plaintiffs' bank credit file, or any portion of plaintiffs' bank credit file, properly can be considered a "consumer report" as this term is defined in the FCRA, we find that plaintiffs have not met their burden in proving a violation of the FCRA. See *Marsalis v. Wilson*, 149 Ohio App.3d 637, 2002-Ohio-5534, 778 N.E.2d 612, at ¶ 15, citing *Kennedy v. Walcutt* (1928), 118 Ohio St. 442, 161 N.E. 336, overruled in part on other grounds by *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 567 N.E.2d 1291 ("A burden of proof is the obligation to show by evidence the existence of any fact or thing necessary to the prosecution of a claim or defense that a party pleads.").

{¶ 51} Failing to meet their burden to support a claim of an FCRA violation, we find that the trial court did not err in finding against plaintiffs with respect to plaintiffs' FCRA claim.

{¶ 52} Accordingly, plaintiffs' second assignment of error is overruled.

{¶ 53} Defendants Satullo and Reminger & Reminger claim, however, that absolute immunity or qualified immunity bars any potential liability under the FCRA. (See defendants' second assignment of error on cross-appeal.)

{¶ 54} Because we have already found that plaintiffs failed to support their claim of an FCRA violation, we find that defendants Satullo and Reminger & Reminger's second assignment of error on cross-appeal pertaining to defenses of absolute or qualified immunity as to plaintiffs' FCRA claim is therefore rendered moot and, accordingly, we do not address it here. See *Germanoff v. Aultman*

*Hosp.*, Stark App. No. 2001CA00306, 2002-Ohio-5054, 2002 WL 31116696, at ¶ 56 ("An appellate court is not required to render an advisory opinion on a moot question or abstract proposition * * * of law that cannot affect matters at issue in a case.").

{¶ 55} Plaintiffs' third assignment of error asserts that the trial court erred in granting summary judgment against plaintiffs concerning plaintiffs' claim of invasion of privacy.

{¶ 56} Intrusion into a person's seclusion is one of four separate branches of tortious invasion of privacy. *Sustin v. Fee* (1982), 69 Ohio St.2d 143, 145, 23 O.O.3d 182, 431 N.E.2d 992, fn. 4. See, also, Restatement of the Law 2d, Torts (1977) 376, Section 652A.[7]

{¶ 57} Section 652B of the Restatement of Torts 2d states the scope of a person's liability for intrusion into another's seclusion. *Sustin*, 69 Ohio St.2d at 145, 23 O.O.3d 182, 431 N.E.2d 992. According to Section 652B, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Id., Restatement of the Law 2d, Torts, at 378.

{¶ 58} Under Ohio law, as stated in *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, paragraph two of the syllabus:

> "An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

{¶ 59} Here, plaintiffs contend that defendants Satullo and Reminger & Reminger wrongfully intruded into plaintiffs' private activities. In support of their claim, plaintiffs rely upon Illustration 4 in Comment *b* to Section 652B of the Restatement of Torts 2d. Illustration 4 provides the following example:

---

7. {¶ a} According to Section 652A of the Restatement of Torts 2d, at 376:
   {¶ b} "(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
   {¶ c} "(2) The right of privacy is invaded by
   {¶ d} "(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or
   {¶ e} "(b) appropriation of the other's name or likeness, as stated in § 652C; or
   {¶ f} "(c) unreasonable publicity given to the other's private life, as stated in § 652D; or
   {¶ g} "(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E."

"A is seeking evidence for use in a civil action he is bringing against B. He goes to the bank in which B has his personal account, exhibits a forged court order, and demands to be allowed to examine the bank's records of the account. The bank submits to the order and permits him to do so. A has invaded B's privacy." Id., Restatement of the Law 2d, Torts, at 379.

{¶ 60} In this case, defendants Satullo and Reminger & Reminger did not forge a court order to secure plaintiffs' confidential bank records. Thus, plaintiffs' reliance upon Illustration 4 in Comment *b* to Section 652B of the Restatement of Torts 2d is inapposite.

{¶ 61} Defendants Satullo and Reminger & Reminger admit, however, that they employed a professional copying company to reproduce the Domtar Gypsum case file before defendant Satullo forwarded the copied case file to attorney Griffith. (Response to Interrogatory No. 33, Defendants' Response to Plaintiffs' First Set of Interrogatories and Request for Production of Documents.) Despite defendants Satullo and Reminger & Reminger's admission, we do not find that employing a professional copying company to reproduce the Domtar Gypsum case file before defendant Satullo forwarded the copied case file to attorney Griffith constitutes a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh,* supra, at paragraph two of the syllabus.

{¶ 62} Moreover, construing the evidence in plaintiffs' favor, and even assuming that defendants Satullo utilized information contained in plaintiffs' bank credit file as plaintiffs contend,[8] plaintiffs failed to show malice to prevent application of qualified immunity as a bar to plaintiffs' invasion-of-privacy claim.

{¶ 63} In *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, the Ohio Supreme Court considered whether a mother on behalf of her son may maintain an action against the mother's former attorney in malpractice even though the son was a third party to the attorney-client relationship that existed between the mother's former attorney and mother. Id., 10 Ohio St.3d at 102–104, 10 OBR 426, 462 N.E.2d 158. The *Scholler* court held that "[a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." Id. at paragraph one of the syllabus. See *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 76, 512 N.E.2d 636, citing *Scholler,* supra ("It is by now well-established

---

8. See Affidavit of Nicholas Satullo dated July 22, 2002, paragraphs 11–16 (averring that Satullo acted in good faith and never used information in plaintiffs' credit file). But, see, Supplemental Affidavit of D. Joe Griffith dated September 13, 2002, paragraph 5 (averring that defendant Satullo utilized information without plaintiffs' permission).

in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice."). See, also, *Elam v. Hyatt Legal Serv.* (1989), 44 Ohio St.3d 175, 541 N.E.2d 616 (following *Scholler,* supra, and distinguishing *Simon).*

{¶ 64} As explained in *Simon,* supra:

"The rationale for this posture is clear: the obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client. As was stated by the court in *W.D.G., Inc.* [*v. Mut. Mfg. & Supply Co.* (1976), 5 O.O.3d 397]:

" ' * * * Some immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client. To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself.' *Id.* at 399–400." Id., 32 Ohio St.3d at 76, 512 N.E.2d 636.

{¶ 65} Here, we conclude that, at the time of the alleged disclosure, plaintiffs were not in privity with defendant Satullo's clients, plaintiffs' former attorneys against whom plaintiffs brought suit. See, e.g., Black's Law Dictionary (7th Ed.1999) 1217 (defining "privity" as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter * * *"). See, also, *Arpadi v. First MSP Corp.* (1994), 68 Ohio St.3d 453, 628 N.E.2d 1335, paragraph three of the syllabus (holding that "[t]hose persons to whom a fiduciary duty is owed are in privity with the fiduciary such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates").

{¶ 66} Thus, absent a finding of privity, the issue resolves to whether defendant Satullo or defendant Reminger & Reminger acted maliciously.

{¶ 67} As observed in *Luciani v. Schiavone* (Jan. 2, 2001), S.D. Ohio No. C–1–97–272, 2001 WL 1842457:

"* * * Ohio courts have provided precious little guidance in the interpretation of the maliciousness requirement of *Scholler* and similar cases. Two Ohio appellate courts have opined that an attorney may act maliciously when he acts with an ulterior motive separate and apart from his client's interests. *See Thompson v. R & R Service Systems, Inc.,* Nos. 96APE10–1277, 96APE10–1278, 1997 WL 359325, (Ohio Ct.App. Franklin Cty. June 19, 1997); *Fallang v. Hickey,* No. CA86–11–163, 1987 WL 16298 (Ohio Ct.App. Butler Cty. [Aug. 31,

1987] ). * * * [H]owever, Ohio law does not require that a plaintiff prove such a motive in order to overcome the general immunity identified in *Scholler*, *supra.*

"In a decision post-dating *Scholler*, the Ohio Supreme Court suggested that an attorney acts maliciously when special circumstances 'such a [sic] fraud, bad faith, [or] collusion' are present. *Simon v. Zipperstein*, 32 Ohio St.3d 74, 76–77 [512 N.E.2d 636] (1987). *See also Firestone v. Galbreath*, 976 F.2d 279, 287 (6th Cir.1992)."

{¶ 68} Here, defendants Satullo and Reminger & Reminger's use of a professional copying service to reproduce a case file does not constitute malicious conduct or conduct without legal justification or excuse. Moreover, although the parties dispute whether defendants Satullo and Reminger & Reminger used plaintiffs' confidential bank records during litigation, we do not find evidence to support a contention that Satullo or Reminger & Reminger *maliciously* used the information from plaintiffs' bank credit file as plaintiffs contend.

{¶ 69} Thus, absent any evidence of malice, we find that nothing prohibits application of qualified immunity to bar plaintiffs' claim of invasion of privacy. See first assignment of error on cross-appeal (arguing in favor of qualified immunity from plaintiffs' claim of invasion of privacy).

{¶ 70} Accordingly, plaintiffs' third assignment of error is overruled. Defendants Satullo and Reminger & Reminger's first assignment of error on cross-appeal is sustained.

{¶ 71} Plaintiffs' fourth assignment of error asserts that the trial court erred in granting summary judgment and absolute immunity to defendants Satullo and Reminger & Reminger for "their intentional or unintentional violation of a court order thus barring plaintiffs' invasion of privacy claim."

{¶ 72} Here, having previously found that plaintiffs' invasion of privacy claim is without merit and that qualified immunity pursuant to *Scholler*, supra, bars plaintiffs' invasion of privacy claim, even if the trial court incorrectly determined that absolute immunity applied, we find that such an error by the trial court related to its application of absolute immunity is harmless. See Civ.R. 61 (harmless error).

{¶ 73} Accordingly, plaintiffs' fourth assignment of error is overruled.

{¶ 74} Plaintiffs' fifth assignment of error asserts that the trial court in its decisions of December 16, 2002, and January 15, 2003, improperly weighed the evidence in favor of defendants Satullo and Reminger & Reminger.

{¶ 75} Based on our own independent review, we have already concluded that, as a matter of law, plaintiffs failed to meet their burden in support of their FCRA

claim and plaintiffs' claim of invasion of privacy is without merit. Therefore, plaintiffs' claim that the trial court improperly weighed evidence in favor of defendants Satullo and Reminger & Reminger is not persuasive.

{¶ 76} Accordingly, plaintiffs' fifth assignment of error is overruled.

{¶ 77} Plaintiffs' sixth assignment of error asserts that the trial court deprived plaintiffs of due process in granting absolute immunity in favor of defendants Satullo and Reminger & Reminger.

{¶ 78} In denying plaintiffs' motion for a second protective order, the trial court observed that "[r]ather than asking for protection against discovery sought in this case, the motion asks for return of documents provided in discovery in another case. That is not the purpose of a Civil Rule 26(C) motion for protective order." (Entry dated November 14, 2001.)

{¶ 79} "A trial court has broad discretion to regulate discovery proceedings. * * * This discretion extends to the issuance of protective orders made pursuant to Civ.R. 26(C). * * * Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. * * * An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable decision." *Van–American Ins. Co. v. Schiappa* (1999), 132 Ohio App.3d 325, 330, 724 N.E.2d 1232.

{¶ 80} Rather than seek redress from the trial court in the malpractice action pertaining to defendants Satullo and Reminger & Reminger's alleged noncompliance with the trial court's protective order, plaintiffs in a separate case moved the trial court for another protective order.

{¶ 81} Under these circumstances, we find that the trial court's denial of plaintiffs' second motion for a protective order was not unreasonable, arbitrary, or unconscionable. Therefore, we find no abuse of discretion by the trial court.

{¶ 82} Furthermore, we find no due process violation as plaintiffs claim.

{¶ 83} "[T]o establish a procedural due process violation, it must be shown that the conduct complained of deprived plaintiff of a liberty or property interest without adequate procedural safeguards. * * * As such, it is not the deprivation itself that is actionable, it is the deprivation without due process of law." *Edwards v. Madison Twp.* (Nov. 25, 1997), Franklin App. No. 97APE06–819, 1997 WL 746415, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1495, 691 N.E.2d 1057.

{¶ 84} Here, evidence in the record supports a finding that plaintiffs were provided with an opportunity to litigate their case and that the trial court afforded adequate procedural safeguards to plaintiffs.

{¶ 85} Accordingly, plaintiffs' sixth assignment of error is not persuasive and is overruled.

{¶ 86} Consequently, (1) having denied plaintiffs' motion to strike defendants Satullo and Reminger & Reminger's cross-appeal; (2) having overruled all of plaintiffs' assignments of error; (3) having sustained defendants Satullo and Reminger & Reminger's first assignment of error on cross-appeal; (4) having found that defendant Satullo and Reminger & Reminger's second assignment of error on cross-appeal is moot; and (5) construing the evidence most strongly in plaintiffs' favor, we therefore find, as a matter of law, that the trial court did not err.

{¶ 87} Because we find no reversible error, we hereby affirm the judgment of the Franklin County Court of Common Pleas, although we affirm for different reasons than did the trial court. See *Phillips v. Dayton Power & Light Co.* (1994), 93 Ohio App.3d 111, 115, 637 N.E.2d 963 ("Since the reviewing court must independently determine, as a matter of law, whether summary judgment was properly rendered based upon the record made up in the trial court, it is legally immaterial whether the trial court has provided a sound analysis, or any analysis. A summary judgment based on a legally erroneous analysis of the issues must be affirmed if the appellate court independently determines that upon the record summary judgment should have been rendered as a matter of law, albeit for different reasons.").

Motion to strike cross-appeal denied
and judgment affirmed.

PEGGY BRYANT and WATSON, JJ., concur.