LeROY et al., Appellants,

v.

ALLEN, YURASEK & MERKLIN et al., Appellees.

[Cite as *LeRoy v. Allen Yurasek & Merklin*, 162 Ohio App.3d 155, 2005-Ohio-4452.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–04–49.

Decided August 29, 2005.

156

Thomas J. Bonasera, Charles E. Ticknor III, and Paul Giorgianni, for appellants.

Joseph W. Ryan Jr. and Carl A. Aveni II, for appellees.

Rogers, Judge.

{¶ 1} Having vacated the previously issued opinion in this case, *LeRoy v. Allen, Yurasek & Merklin,* 3d Dist. No. 14-04-49, 2005-Ohio-3516, we issue the following opinion on reconsideration.

{¶ 2} Plaintiffs-appellants, Julie Behrens LeRoy and Mary Behrens Miller, appeal a judgment of the Union County Court of Common Pleas, granting the motion to dismiss of defendants-appellees, Allen, Yurasek & Merklin, David Allen, and Stephen Yurasek (jointly, "appellees") pursuant to Civ.R. 12(B)(6). On appeal, appellants assert that the trial court committed error in finding that they were barred, under *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 512 N.E.2d 636, from asserting a claim of legal malpractice against appellees. Finding that the claims asserted by appellants in their complaint fall within the exception to the *Simon v. Zipperstein* rule, we reverse the judgment of the trial court.

{¶ 3} On May 1, 2002, decedent, Mary Elizabeth Behrens, died, survived by her three children, who included appellants and Dan Behrens, as well as her grandson, Kevin Behrens, son of Dan Behrens. Prior to her death, Mary Behrens and her children were the owners of Marysville Newspapers, Inc. ("Marysville News"). Marysville News was a small, family-owned corporation that published several newspapers in Union, Delaware, Hardin, Wyandot, and Logan counties. As of October 2001, the distribution of the 143 shares of stock in

Marysville News was as follows: Decedent owned 63 shares, Dan Behrens owed 30 shares, Julie Behrens owned 30 shares and Mary Behrens owned 20 shares.

{¶ 4} Appellants allege that in November 2001, a new will was prepared and that appellee, David Allen, represented the decedent in the preparation of that will. Additionally, appellants allege that in December 2001, appellees participated in a stock transfer involving the decedent and Kevin.

{¶ 5} In December 2002, following the decedent's death, appellants filed a complaint, on their own behalf, against appellees. In their complaint, appellants alleged two counts of legal malpractice, which included negligence and breach of contract. Additionally, the complaint alleged the following facts:

9. The [Marysville News] is a closely held corporation within the ambit of *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217 and its progeny.

\* \* \*

11. As of November 2001, Decedent was under the care of others 24 hours a day due to numerous physical ailments and dementia.

12. As of November 2001 and until Decedent's death, Dan was Decedent's attorney in fact.

13. Prior to November 2001, Decedent had a will.

14. Upon information and belief, in November 2001, Dan Behrens orchestrated the execution of another purported Will ("November 2001 Will"). Defendant Allen represented the Decedent in the preparation of the November 2001 Will.

15. On December 27, 2001, Dan and Kevin Behrens orchestrated a separate transfer of all of Decedent's stock in [Marysville News] to Kevin.

16. Despite being the attorney in fact for Decedent, Dan advised Kevin with respect to said transfer and participated in setting the price for the transfer.

17. The transfer price was $567,000, for which Kevin gave Decedent a promissory note. Kevin gave Decedent a security interest in the shares, but Dan, Kevin, and Defendants later orchestrated a release of that security for other than fair value.

18. Defendants participated in the preparation and/or execution of the November 2001 Will and in doing so simultaneously acted as counsel for Decedent, Dan, Kevin, and [Marysville News].

19. Defendants prepared the documents by which Dan and Kevin effectuated the transfer of all of Decedent's [Marysville News] stock to Kevin, and in doing so simultaneously acted as counsel for Decedent, Kevin and the [Marysville News].

20. The November 2001 Will is not the last will and testament of Decedent, because it was the result of undue pressure and/or influence upon Decedent, imposed directly and indirectly by Dan and Kevin, in collusion with Defendants.

{¶ 6} In their first count of legal malpractice, appellants alleged that appellees negligently assisted in the transfer of the decedent's Marysville News stock and that appellees were negligent in the preparation of the decedent's will. In the second count of legal malpractice, appellants alleged that appellees breached their contract to provide legal services with respect to the decedent's estate planning. The second count was based upon the tortious actions in the first count. In their complaint, appellants argued that appellees lack immunity under *Simon v. Zipperstein,* because appellees acted in bad faith. In the alternative, appellants argued that if their case did fall within the *Simon v. Zipperstein* rule, then appellees' actions fell within one of the exceptions to that rule. Specifically, appellants noted that the apparent conflict of interest in appellees' representation of the decedent as well as Dan and Kevin rose to the level of collusion. Additionally, appellants asserted that they were in privity with the decedent for the issue of the stock transfer.

{¶ 7} In January 2003, appellees filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), arguing that appellants, as third parties, were barred from pursuing claims of legal malpractice against appellees for their representation of the decedent, pursuant to *Simon v. Zipperstein,* 32 Ohio St.3d 74, 512 N.E.2d 636. Subsequently, the trial court granted appellees' motion to dismiss.[1] It is from this judgment that appellants appeal, presenting the following assignment of error for our review.

The court of common pleas erred in dismissing Appellants' Complaint (filed on their own behalf in Union County Court of Common Pleas No. 02–CV–0327) for failure to state a claim upon which relief can be granted.

{¶ 8} In the sole assignment of error, appellants assert that the trial court erred in granting appellees' Civ.R. 12(B)(6) motion to dismiss. Essentially, appellants assert that their complaint does, in fact, state a claim upon which relief can be granted because (1) their claims do not fall within the general rule of *Simon v. Zipperstein* and (2) even if their claims do fall within the general rule of *Simon v. Zipperstein,* appellees' actions fall within the exceptions to that general rule.

---

1. In addition to this cause, in April 2003, appellants filed a similar complaint on behalf of the estate. That case number is 03–CV–0127, and it was consolidated with this case by the trial court in September 2004. We note that the judgment entry dismissing appellants' complaint in this case includes a notation that case No. 03–CV–0127 remains pending.

**{¶ 9}** In reviewing a Civ.R. 12(B)(6) motion for dismissal, we accept all of the factual allegations in the complaint as true. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. Because the factual allegations are presumed to be true, a reviewing court must decide only legal issues, and an entry of dismissal on the pleadings is reviewed de novo. *Schumacher v. Amalgamated Leasing, Inc.*, 156 Ohio App.3d 393, 2004-Ohio-1203, 806 N.E.2d 189, at ¶ 5, citing *Mitchell*, 40 Ohio St.3d at 192, 532 N.E.2d 753. However, "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *Schumacher*, 156 Ohio App.3d 393, 2004-Ohio-1203, 806 N.E.2d 189, at ¶ 5, citing *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144–145, 573 N.E.2d 1063. "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

**{¶ 10}** In the case sub judice, counts one and two involve claims of negligence and breach of contract, respectively. Both counts raise claims of legal malpractice, and both are based upon the same alleged conduct. Essentially, the conduct complained of involves two separate legal issues. The first issue deals with the transfer of the decedent's Marysville News stock. According to appellants' complaint, the transfer was made prior to the decedent's death, and appellees assisted in that transfer. The second issue involves appellees' participation in the preparation of a will, which was allegedly drafted for the decedent in November 2001.

**{¶ 11}** Attorneys in Ohio enjoy a qualified immunity from liability to a third party arising out of acts he or she takes while representing a client. *Hahn v. Satullo*, 156 Ohio App.3d 412, 2004-Ohio-1057, 806 N.E.2d 567, at ¶ 69. "An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." *Simon v. Zipperstein*, 32 Ohio St.3d at 77, 512 N.E.2d 636, citing *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph one of the syllabus. In *Simon*, the court set forth the following rationale for this rule: "[T]he obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client." Id. at 76, 512 N.E.2d 636. The fear of indiscriminate third-party suits against attorneys would make attorneys reluctant to offer zealous client representation. Id. To allay this fear, courts place a heightened burden on third parties seeking to assert claims against attorneys representing their clients. Other state courts have taken similar approaches. See, e.g., *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.* (Colo.1995), 892 P.2d 230, 235 (attorney not

liable to nonclient absent fraud or malice); *Strid v. Converse* (1983), 111 Wis.2d 418, 331 N.W.2d 350, 356 (attorney not liable to nonclient unless fraud, collusion, or malicious or tortious act); *Roth v. La Societe Anonyme Turbomeca France* (Mo.App.2003), 120 S.W.3d 764, 776 (same); but, see, *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (Cal.App.2003), 107 Cal.App.4th 54, 69, 131 Cal.Rptr.2d 777 (no special preference for suit against third-party attorney).

{¶ 12} In their complaint and on appeal, appellants assert that *Simon v. Zipperstein* should not control, because appellees acted in bad faith. Essentially, appellants argue that the issue of bad faith is a gateway issue that must be addressed first. As noted above, in *Simon v. Zipperstein*, the Supreme Court, quoting *Scholler*, held that " '[a]n attorney is immune from liability to third persons *arising from his performance as an attorney in good faith* on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously.' " *Simon v. Zipperstein*, 32 Ohio St.3d at 77, 512 N.E.2d 636. While appellants argue that under this rule bad faith is a gateway issue, upon review of the rest of the *Simon v. Zipperstein* opinion, we find that bad faith is merely one of the special circumstances or exceptions to the general immunity granted under the rule. Specifically, the Supreme Court in *Simon v. Zipperstein* also states that "[i]n the instant case, appellee's complaint set forth no special circumstances such as fraud, *bad faith*, collusion or other malicious conduct which would justify departure from the general rule." (Emphasis added.) Id. at 76–77, 512 N.E.2d 636. Thus, based upon the Supreme Court's own language, we are satisfied that allegations of bad faith are merely an additional special circumstance or exception that must be alleged.

{¶ 13} Additionally, considering the definition of bad faith, we find that bad faith is essentially embodied within any malicious behavior that would otherwise be alleged. Bad faith has been defined as " 'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' " *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d ,272, 276, 6 OBR 337, 452 N.E.2d 1315, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus, which was overruled on other grounds in *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397. Thus, based on the above definition, it is difficult to envision a case in which an attorney who has engaged in fraud, collusion, or other malicious conduct without having acted in bad faith. Accordingly, we find bad faith to be an element of fraud, collusion, or other malicious conduct rather than a separate issue to be considered on its own.

{¶ 14} Having found that bad faith is not a separate gateway issue, we will now consider whether the issue of the stock transfer falls within one of the exceptions to the general qualified immunity set forth in *Simon v. Zipperstein*. As to this

issue, appellants' complaint stated that Marysville News was a closely held corporation, within the ambit of *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217. The complaint included the stock allocation for the Marysville News prior to the transfer, showing that at that time, the decedent was the majority stockholder in what appeared to be a closely held corporation. Finally, the complaint alleged that the decedent, as the majority stockholder of the Marysville News, owed a fiduciary duty to appellants.

{¶ 15} In *Arpadi v. First MSP Corp.* (1994), 68 Ohio St.3d 453, 628 N.E.2d 1335, the Supreme Court addressed an attorney malpractice claim by a third party, involving a limited partnership. In addressing the issue of a third party's claim of attorney malpractice, the *Arpadi* court noted that it has been recognized that "an attorney retained by a fiduciary owes a similar duty to those with whom the client has a fiduciary relationship." Id. at 458, 628 N.E.2d 1335. The court went on to state that "[i]n a partnership, the partners of which it is composed owe a fiduciary duty to each other. Consequently, in a limited partnership, the general partner owes a fiduciary duty to the limited partners of the enterprise." (Citations omitted.) Id. at paragraph two of the syllabus.

{¶ 16} Accordingly, the court held that *"[a] fortiori* those persons to whom a fiduciary duty is owed are in privity with the fiduciary such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates." Id. at 458, 628 N.E.2d 1335. Therefore, the court went on to recognize that limited partners are indistinguishable from general partners and that a fiduciary relationship exists between limited partners, creating privity and, furthermore, an attorney-client relationship between the general partner's attorney and the limited partners. Id.

{¶ 17} *Crosby v. Beam,* 47 Ohio St.3d at 107, 548 N.E.2d 217, defines a closely held corporation as "a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market." In determining whether an individual stockholder in a closely held corporation could bring an individual action as opposed to a shareholder's derivative suit, the *Crosby* court held that "[g]enerally, majority shareholders have a fiduciary duty to minority shareholders." Id. at 108, 548 N.E.2d 217. Additionally, the court said, "This duty is similar to the duty that partners owe one another in a partnership because of the fundamental resemblance between the closely held corporation and a partnership." Id.

{¶ 18} In the case sub judice, appellants have clearly alleged that Marysville News was a closely held corporation, under the definition provided in *Crosby,* and that the decedent was the majority stockholder in that closely held corporation. Thus, because the decedent, as the majority stockholder, owed a fiduciary duty to appellants, as minority stockholders, we find that appellants were in privity with

the decedent for the purposes of the stock transfer, pursuant to *Arpadi.* Accordingly, appellants' claim involving the stock transfer clearly falls within the privity exception to the *Simon v. Zipperstein* rule.

{¶ 19} Based on the above, we are satisfied that, taking the allegations in the complaint as true, appellants have set forth facts, which, if proven, would allow them to recover. Accordingly, the trial court erred in dismissing appellants' complaint pursuant to Civ.R. 12(B)(6) on the issue of the stock transfer.

{¶ 20} Secondly, we address the issue of the will. As noted above, the Supreme Court in *Simon v. Zipperstein* held that "an attorney is immune from liability to third persons arising from his performance as an attorney in good faith, * * * unless such third person is in privity with the client or the *attorney acts maliciously.*" (Emphasis added.) *Simon,* 32 Ohio St.3d at 77, 512 N.E.2d 636. In deciding the case, the Supreme Court made the following findings: "In the instant case, appellee's complaint set forth no special circumstances such as fraud, bad faith, *collusion* or other malicious conduct which would justify departure from the general rule." (Emphasis added.) Id. at 76–77, 512 N.E.2d 636.

{¶ 21} In the case sub judice, appellants' complaint specifically alleged a conflict of interest in appellees' representation of the decedent and Dan Behrens. Additionally, appellants specifically alleged that "Defendants committed some or all of the aforementioned acts in collusion with Dan and Kevin."

{¶ 22} Taking appellants' allegations as true, appellants have clearly set forth collusion, which is one of the special circumstances specifically mentioned in *Simon v. Zipperstein.* Accordingly, without commenting on the sufficiency of the evidence, we are satisfied that appellants' complaint has set forth facts that if true, would allow them to recover, since their claim falls within one of the exceptions of the *Simon v. Zipperstein* rule. Therefore, the trial court additionally erred in granting appellees' Civ.R. 12(B)(6) motion to dismiss on the issue of the will.

{¶ 23} Having found that appellants were in privity with the decedent on the issue of the stock transfer and that their complaint clearly set forth the special circumstance of collusion on the issue of the will, we sustain appellants' assignment of error.

{¶ 24} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

CUPP, P.J., and SHAW, J., concur.