OPINION
{¶ 1} Having vacated the previously issued opinion in this case,Leroy, et al. v. Allen, Yurasek Merklin, et al., 3d Dist. No. 14-04-49, 2005-Ohio-3516, we issue the following opinion upon motion for reconsideration.
 {¶ 2} Plaintiffs-Appellants, Julie Behrens LeRoy and Mary Behrens Miller (hereinafter jointly referred to as "Appellants"), appeal a judgment of the Union County Court of Common Pleas, granting Defendants-Appellees, Allen Yurasek Merklin, David Allen and Stephen Yurasek (hereinafter jointly referred to as "Appellees"), motion to dismiss, pursuant to Civ.R. 12(B)(6). On appeal, Appellants assert that that the trial court committed error in finding that they were barred, under Simon v. Zipperstein (1987), 32 Ohio St.3d 74, from asserting a claim of legal malpractice against Appellees. Finding that the claims asserted by Appellants in their complaint fall within the exception to the Simon v. Zipperstein rule, we reverse the judgment of the trial court.
 {¶ 3} On May 1, 2002, Decedent, Mary Elizabeth Behrens, died, survived by her three children, who included Appellants and Dan Behrens, as well as her grandson, Kevin Behrens, son of Dan Behrens. Prior to her death, Mary Behrens and her children were the owners of Marysville Newspapers, Inc. ("Marysville News") Marysville News was a small, family owned corporation, which published several newspapers in Union, Delaware, Hardin, Wyandot and Logan counties. As of October of 2001, the distribution of the one hundred and forty-three shares of stock in Marysville News was as follows: Decedent owned sixty-three shares, Dan Behrens owed thirty shares, Julie Behrens owned thirty shares and Mary Behrens owned twenty shares.
 {¶ 4} Appellants allege that, in November of 2001, a new will was prepared and that Appellee, David Allen, represented Decedent in the preparation of that will. Additionally, Appellants allege that, in December of 2001, Appellees participated in a stock transfer, involving Decedent and Kevin.
 {¶ 5} In December of 2002, following Decedent's death, Appellants filed a complaint, on their own behalf, against Appellees. In their complaint, Appellants alleged two counts of legal malpractice, which included negligence and breach of contract. Additionally, the complaint alleged the following facts:
* * *
9. The [Marysville News] is a closely held corporation within the ambitof Crosby v. Beam (1989), 47 Ohio St.3d 105 and its progeny.
* * *
11. As of November 2001, Decedent was under the care of others24 hours a day due to numerous physical ailments and dementia.
 12. As of November 2001 and until Decedent's death, Dan was Decedent'sattorney in fact.
 13. Prior to November 2001, Decedent had a will.
 14. Upon information and belief, in November 2001, Dan Behrensorchestrated the execution of another purported Will ("November 2001Will"). Defendant Allen represented the Decedent in the preparation ofthe November 2001 Will.
 15. On December 27, 2001, Dan and Kevin Behrens orchestrated aseparate transfer of all of Decedent's stock in [Marysville News]to Kevin.
 16. Despite being the attorney in fact for Decedent, Dan advised Kevinwith respect to said transfer and participated in setting the price forthe transfer.
 17. The transfer price was $567,000, for which Kevin gave Decedent apromissory note. Kevin gave Decedent a security interest in the shares,but Dan, Kevin, and Defendants later orchestrated a release of thatsecurity for other than fair value. 18. Defendants participated in thepreparation and/or execution of the November 2001 Will and in doing sosimultaneously acted as counsel for Decedent, Dan, Kevin, and [MarysvilleNews].
 19. Defendants prepared the documents by which Dan and Kevineffectuated the transfer of all of Decedent's [Marysville News] stock toKevin, and in doing so simultaneously acted as counsel for Decedent,Kevin and the [Marysville News].
 20. The November 2001 Will is not the last will and testament ofDecedent, because it was the result of undue pressure and/or influenceupon Decedent, imposed directly and indirectly by Dan and Kevin, incollusion with Defendants.
 {¶ 6} In their first count of legal malpractice, Appellants alleged that Appellees' negligently assisted in the transfer of Decedent's Marysville News stock and that Appellees were negligent in the preparation of Decedent's will. In the second count of legal malpractice, Appellants alleged that Appellees' breached their contract to provide legal services with respect to Decedent's estate planning. The second count was based upon the tortuous actions in the first count. In their complaint, Appellants argued that Appellees lack immunity under Simon v.Zipperstein, because Appellees acted in bad faith. In the alternative, Appellants argued that if their case did fall within the Simon v.Zipperstein rule, then Appellees actions fell within one of the exceptions to that rule. Specifically, Appellants noted that the apparent conflict of interest in Appellees' representation of Decedent as well as Dan and Kevin, rose to the level of collusion. Additionally, Appellants asserted that they were in privity with Decedent for the issue of the stock transfer.
 {¶ 7} In January of 2003, Appellees filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), arguing that Appellants, as third parties, were barred from pursuing claims of legal malpractice against Appellees for their representation of Decedent, pursuant to Simon v. Zipperstein.
Subsequently, the trial court granted Appellees' motion to dismiss.[1]
It is from this judgment that Appellants appeal, presenting the following assignment of error for our review.
The court of common pleas erred in dismissing Appellant's Complaint(filed on their own behalf in Union County Court of Common Pleas No.02-CV-0327) for failure to state a claim upon which relief can begranted.
 {¶ 8} In the sole assignment of error, Appellants assert that the trial court erred in granting Appellees' Civ.R. 12(B)(6) motion to dismiss. Essentially, Appellants assert that their complaint does, in fact, state a claim upon which relief can be granted because (1) their claims do not fall within the general rule of Simon v. Zipperstein and (2) even if their claims do fall within the general rule of Simon v.Zipperstein, Appellees' actions fall within the exceptions to that general rule.
 {¶ 9} In reviewing a Civ.R. 12(B)(6) motion for dismissal, we accept all of the factual allegations in the complaint as true. Mitchell v.Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192. Because the factual allegations are presumed to be true, a reviewing court must decide only legal issues, and an entry of dismissal on the pleadings is reviewed de novo. Schumacher v. Amalgamated Leasing, Inc., 156 Ohio App.3d 393,2004-Ohio-1203, at ¶ 5, citing Mitchell, 40 Ohio St.3d at 192. However, "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." Schumacher, 156 Ohio App.3d at ¶ 5, citing York v. Ohio State Hwy. Patrol (1991), 60 Ohio St.3d 143,144-145. "In order to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R.12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v. Univ. Community Tenants Union,Inc. (1975), 42 Ohio St.2d 242, syllabus.
 {¶ 10} In the case sub judice, counts one and two involve claims of negligence and breach of contract respectively. Both counts raise claims of legal malpractice and both are based upon the same alleged conduct. Essentially, the conduct complained about involves two separate legal issues. The first issue deals with the transfer of Decedent's Marysville News stock. According to Appellants' complaint, the transfer was made prior to Decedent's death and Appellees assisted in that transfer. The second issue involves Appellees' participation in the preparation of a will, which was allegedly drafted for Decedent in November of 2001.
 {¶ 11} Attorneys in Ohio enjoy a qualified immunity from liability to a third party arising out of acts he or she takes while representing a client. Hahn v. Satullo, 156 Ohio App.3d 412, 2004-Ohio-1057, at ¶69. "An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." Simon v. Zipperstein,32 Ohio St.3d at 77, citing Scholler v. Scholler (1984), 10 Ohio St.3d 98, para. one of the syllabus. In Simon, the Court set forth the following rationale for this rule: "[T]he obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client." Simon at 76. The fear of indiscriminate third party suits against attorneys would make attorneys reluctant to offer zealous client representation. Id. To allay this fear, courts place a heightened burden on third parties seeking to assert claims against attorneys representing their clients. Other state courts have taken similar approaches. See, e.g., Mehaffy, Rider, Windholz Wilson v. Central Bank Denver, N.A. (Colo. 1995), 892 P.2d 230, 235
(attorney not liable to non-client absent fraud or malice); Strid v.Converse (Wis. 1983), 331 N.W.2d 350, 356 (attorney not liable to non-client unless fraud, collusion, or malicious or tortious act); Rothv. La Societe Anonyme Turbomeca France (Mo.App. 2003), 120 S.W.3d 764,776 (same); but, see, Shafer v. Berger, Kahn, Shafton, Moss, Figler,Simon Gladstone (Cal.App. 2003), 107 Cal.App. 4th 54, 69 (no special preference for suit against third-party attorney).
 {¶ 12} In their complaint and on appeal, Appellants assert that Simonv. Zipperstein should not control, because Appellees acted in bad faith. Essentially, Appellants argue that the issue of bad faith is a gateway issue, which must be addressed first. As noted above, in Simon v.Zipperstein, the Supreme Court, quoting Scholler, held that "`[a]n attorney is immune from liability to third persons arising from hisperformance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts with maliciously.'" Simon v. Zipperstein,32 Ohio St.3d at 77. While Appellants argue that under this rule bad faith is a gateway issue, upon review of the rest of the Simon v.Zipperstein opinion, we find that bad faith is merely one of the special circumstances or exceptions to the general immunity granted under the rule. Specifically, the Supreme Court, in Simon v. Zipperstein, also states that "[i]n the instant case, appellee's complaint set forth no special circumstances such as fraud, bad faith, collusion or other malicious conduct which would justify departure from the general rule." Id. at 76-77. Thus, based upon the Supreme Court's own language we are satisfied that allegations of bad faith are merely an additional special circumstance or exception that must be alleged.
 {¶ 13} Additionally, considering the definition of bad faith, we find that bad faith is essentially embodied within any malicious behavior that would otherwise be alleged. Bad faith has been defined as "`a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 276, quoting Slater v. Motorists Mut. Ins. Co. (1962), 174 Ohio St. 148, para. two of the syllabus, overruled on other grounds in Zoppo v.Homestead Ins. Co. (1994), 71 Ohio St.3d 552. Thus, based on the above definition, it is difficult to envision a case where you could have an attorney who has engaged in fraud, collusion or other malicious conduct without having acted in bad faith. Accordingly, we find bad faith to be an element of fraud, collusion or other malicious conduct, rather than a separate issue to be considered on its own.
 {¶ 14} Having found that bad faith is not a separate gateway issue, we will now consider whether the issue of the stock transfer falls within one of the exceptions to the general qualified immunity set forth inSimon v. Zipperstein. As to this issue, Appellants' complaint stated that Marysville News was a closely held corporation, within the ambit ofCrosby v. Beam. The complaint included the stock allocation for the Marysville News prior to the transfer, showing that at that time Decedent was the majority stock holder in what appeared to be a closely held corporation. Finally, the complaint alleged that Decedent, as the majority stockholder of the Marysville News, owed a fiduciary duty to Appellants.
 {¶ 15} In Arpadi v. First MSP Corp (1994), 68 Ohio St.3d 453, the Supreme Court addressed an attorney malpractice claim by a third party, involving a limited partnership. In addressing the issue of a third party's claim of attorney malpractice, the Arpadi Court noted that it has been recognized that "an attorney retained by a fiduciary owes a similar duty to those with whom the client has a fiduciary relationship." Id. at 458. The Court went on to state that "[i]n a partnership, the partners of which it is composed owe a fiduciary duty to each other. Consequently, in a limited partnership, the general partner owes a fiduciary duty to the limited partners of the enterprise." Id. (citations omitted.)
 {¶ 16} Accordingly, the Court held that "[a] fortiori those persons to whom a fiduciary duty is owed are in privity with the fiduciary such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates." Id. As such, the Court went on to recognize that limited partners are indistinguishable from general partners and that a fiduciary relationship exists between limited partners, creating privity and, furthermore, an attorney-client relationship between the general partner's attorney and the limited partners. Id.
 {¶ 17} Crosby v. Beam, 47 Ohio St.3d at 107, defines a closely held corporation as "a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market." In determining whether an individual stockholder in a closely held corporation could bring an individual action as opposed to a shareholder's derivative suit, the Crosby Court held that "[g]enerally, majority shareholders have a fiduciary duty to minority shareholders." Id. at 108. Additionally, the Court went on to state that "[t]his duty is similar to the duty that partners owe one another in a partnership because of the fundamental resemblance between the closely held corporation and a partnership." Id.
 {¶ 18} In the case sub judice, Appellants have clearly alleged that Marysville News was a closely held corporation, under the definition provided in Crosby, and that Decedent was the majority stockholder in that closely held corporation. Thus, because Decedent, as the majority stockholder, owed a fiduciary duty to Appellants, as minority stockholders, we find that Appellants were in privity with Decedent for the purposes of the stock transfer, pursuant to Arpadi. Accordingly, Appellants' claim involving the stock transfer clearly falls within the privity exception to the Simon v. Zipperstein rule.
 {¶ 19} Based on the above, we are satisfied that, taking the allegations in the complaint as true, Appellants have set forth facts, which, if proven, would allow them to recover. Accordingly, the trial court erred in dismissing Appellants' complaint pursuant to Civ.R. 12(B)(6) on the issue of the stock transfer.
 {¶ 20} Secondly, we address the issue of the will. As noted above, the Supreme Court in Simon v. Zipperstein, held that "an attorney is immune from liability to a third person arising from his performance as an attorney in good faith, unless such third person is in privity with the client or the attorney acts maliciously." Simon, 32 Ohio St.3d at 77
(emphasis added). In deciding the case in Simon v. Zipperstein, the Supreme Court made the following findings: "In the instant case, appellee's complaint set forth no special circumstances such as fraud, bad faith, collusion or other malicious conduct which would justify departure from the general rule." Id. at 76-77 (emphasis added).
 {¶ 21} In the case sub judice, Appellant's complaint specifically alleged a conflict of interest in Appellees' representation of Decedent and Dan Behrens. Additionally, Appellants specifically alleged that "Defendants committed some or all of the aforementioned acts in collusion with Dan and Kevin."
 {¶ 22} Taking Appellants' allegations as true, Appellants have clearly set forth collusion, which is one of the special circumstances specifically mentioned in Simon v. Zipperstein. Accordingly, without commenting on the sufficiency of the evidence, we are satisfied that Appellants' complaint has set forth facts which if true would allow them to recover, since their claim falls within one of the exceptions of theSimon v. Zipperstein rule. Therefore, the trial court additionally erred in granting Appellees' Civ.R. 12(B)(6) motion to dismiss on the issue of the will.
 {¶ 23} Having found that Appellants' were in privity with Decedent on the issue of the stock transfer and that their complaint clearly set forth the special circumstance of collusion on the issue of the will, Appellants' assignment of error is sustained.
 {¶ 24} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 Cupp, P.J., and Shaw, J., concur.
[1] In addition to this cause, in April of 2003, Appellants filed a similar complaint on behalf of the estate. That case number is 03-CV-0127, and it was consolidated with this case by the trial court in September of 2004. We note that the judgment entry dismissing Appellants' complaint in this case includes a notation that case number 03-CV-0127 remains pending.